539 So.2d 824 (1989)
Thomas G. BROUSSARD, Plaintiff-Appellant,
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, STATE OF LOUISIANA, Defendant-Appellee.
No. 87-1276.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*825 Jones, Jones & Alexander, Michael H. Bercier, Cameron, for plaintiff-appellant.
Bertrand & Soileau, Carol S. Hunter, Rayne, for defendant-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
The question we consider in this case is whether the tort immunity statutes relative to recreational lands (LSA-R.S. 9:2791 and LSA-R.S. 9:2795) apply to a boat ramp on a small slip leading into the Intracoastal Canal in Cameron Parish, Louisiana.
This is a personal injury case. Plaintiff was injured in the early morning of March *826 10, 1985 when his foot slipped on some algae on a concrete boat launch ramp at Lacassine Refuge in Cameron Parish. Plaintiff sustained a badly broken leg. This suit was instituted to recover damages against the State for its alleged failure to maintain the ramp. The trial court denied the State's motion for summary judgment based on statutory immunity. After a trial on the merits, the trial court rendered judgment in favor of the State based on the statutory immunity provided for owners of undeveloped rural or semi-rural land used for recreational purposes under LSA-R.S. 9:2791 and LSA-R.S. 9:2795. Plaintiff appeals the judgment of the trial court, contending that the trial judge erred in holding that the State was entitled to statutory immunity under LSA-R.S. 9:2791 and LSA-R.S. 9:2795. We affirm.

OPINION
The trial court has provided an excellent analysis of the pertinent law and facts of this case in its written reasons for judgment which we adopt herein as our own and set forth below. It directly addresses most of plaintiff-appellant's arguments on appeal.
"The plaintiff in this case suffered damages from an accident which occurred on a boat ramp owned by the defendant. The defendant claims immunity through R.S. 9:2791 and 9:2795. For easy reference, those two statutes read as follows:
R.S. 9:2791:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purpose or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
The word `premises' as used in this Section includes lands, roads, water courses, private ways and buildings, structures, machinery or equipment thereon.
R.S. 9:2795:
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of their age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for *827 recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or license to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of the Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for nonrecreational purposes.
"The pertinent facts, uncontested, can be briefly stated. The plaintiff, Thomas Gilman Broussard, traveled to Cameron Parish, Louisiana, on the morning of March 10, 1985 for a fishing excursion with a friend. The two arrived at approximately 6:00 a.m. at the location where their fishing craft would be launched. Their plans were to make use of a ramp provided by the State of Louisiana, defendant herein. The ramp is a simple concrete structure, offering boaters a sloped, hard surface on which boat trailers, still attached to a vehicle, can be eased down to or near the water level thereby facilitating the launching or recovering of a trailerborne vessel. This particular ramp gave access to a small slip or ditch which in turn was connected to the Intracoastal Canal. The location is almost directly beneath a high-rise, immovable bridge which is the traverse point of Louisiana Highway 27 with the Intracoastal Canal. Access to the ramp site is obtained by exiting Louisiana Highway 27 near the north approach to the bridge onto a service road which then parallels the highway until it reaches the water's edge. In connection with the ramp, the State of Louisiana also maintains a shell-covered parking lot and a small wharf.
"While on the ramp on the morning of March 10, 1985 plaintiff slipped, fell and was injured. The State of Louisiana claims that as owner of the premises it owes no duty of care to the plaintiff who was making use of the ramp for a recreational fishing trip.
"Plaintiff argues vigorously that the case law has put limitations on the operation of R.S. 9:2791 and that the defendant herein should not be granted the immunity of that statute. Plaintiff cites a recent case which presents a set of facts remarkably close to the case sub judice. It is also the latest expression by the Supreme Court of Louisiana on the two part test used in applying R.S. 9:2791. Ratcliff v. Town of Mandeville, 502 So.2d 566 (La.1987). The Court discussed the test as follows:
`This court has described two factors to consider when determining whether the immunity provided by R.S. 9:2791 and 9:2795 is applicable to a given set of facts. First, the property where the injury occurred must be an undeveloped, non-residential rural or semi-rural land *828 area. Second, the injury itself must be the result of recreation that can be pursued in the "true outdoors."'
"Simply put, the first part of the test addresses itself to the locality and the second part of the test to the activity. Looking at the first part of the test then, the locality in which this injury occurred must be reviewed.
"One witness who testified relating to the character of the area was Mervyn Chesson, who testified that he had been raised in the vicinity. This area is known as Gibbstown, a designation originally given by the Louisiana Department of Transportation and Development. However, no town exists. Chesson related that before the bridge was built and the crossing of the canal was accomplished by a ferry boat, retail establishments such as a grocery store and a tavern existed on either side of the canal. With the building of the bridge, those establishments closed and no retail businesses remain. A short distance down the canal bank there is a facility which stock piles oyster and clam shell and is the site of a permanent weighing apparatus. He testified that while there are also some houses, some used as camps and some used as permanent dwellings, on the bank of the Intracoastal Canal in the near proximity, none exists near the location of the boat ramp. He also stated that one woman still lived at Gibbstown. This is a confusing statement in view of the fact that there is evidence of some other residents in the general area. The court takes this last statement to mean that there is only one person still living at Gibbstown from the population which Chesson knew as a young man.
"Also testifying was John Burke Verret, who was a maintenance specialist with the Louisiana Department of Highways and who was familiar with the construction of the ramp and with its environs. He testified that the terrain to the west and south of the canal was an uninhabited marshy area and only to the east down on the bank of the canal were there any dwellings. These were random buildings in a rural setting, individually placed with no subdivision plan. He also stated that none of these residences were near the location of the ramp. The only things found near the ramp itself were the parking lot and wharf mentioned above, placed there for the convenience of the ramp users.
"Gibbstown is rural. There is no town or even a village. The isolation of the few homes located down the canal from the bridge site only emphasizes the rural nature of the area. If the term "undeveloped" as used in Ratcliff refers to any residential development, then clearly there is none. If a commercial development is contemplated, then that will be considered in the following paragraphs discussing the canal. While the evidence is that some people live on the canal bank in the vicinity, the record does not give their number and suggests that the population is minute and disassociated from the site of the accident.
"Comparing the Ratcliff case, the plaintiff there also slipped and fell. He was on a boat dock while returning from a recreational shrimping trip. The succinct opinion of the court in Ratcliff rejected the immunity argument because the dock was `within a populated city, adjacent to a frequently traveled Lakeshore Drive and within a stone's throw of a residential area'. The three descriptive phrases do not apply to this case and form a contrast with the Gibbstown area. Plaintiff suggests, however, that the presence of the Intracoastal Canal in this case should have the same legal effect as the presence of the `frequently traveled Lakeshore Drive' in Ratcliff. This does not stand scrutiny.
"The obvious concern of the courts in Ratcliff and several other cases in which immunity was rejected, has been the presence of people. Hence, the discussions of populations and residential developments. While the boat ramp site and the Intracoastal Canal are near one another, the relationship between the two has nothing to do with the volume of frequency of their respective uses. Commercial users of the Intracoastal Canal make no use of the kind of boat ramp facility at issue here.
"Plaintiff asserts that regardless of the fact that no connection exists between the *829 users of the boat ramp and users of the canal, the presence of the canal precludes the characterization of this area as `undeveloped.'
"The Intracoastal Canal is a manmade waterway which traverses the entire State of Louisiana and is maintained primarily for commercial boat traffic. The boat ramp in this case is designed for launching into the slip which runs perpendicular from the canal. Fishermen using the ramp usually boat out of the slip into the Intracoastal Canal and thence in all directions to the fishing grounds located in the extensive marsh lands through which the canal travels.[*] Unquestionably, that was the plan of the plaintiff and his companion on the morning of the accident. However, the use of the canal by fishermen is only incidental. Although they make use of the water course for easy access, the canal does not affect the general nature of the area nor does it affect the nature of the activities such as fishing, hunting and trapping, to which the area lends itself.
"The Intracoastal Canal traverses vast expanses of marsh and other wetlands on its trip through South Louisiana. If the presence of the canal would have the legal effect suggested by plaintiff, then a large part of the wilderness of the state would be exempt from the operation of R.S. 9:2791. Such a result would be hardly in keeping with the legislative intent.
"The second half of the test formulated by the court reads that the injury itself must be the result of recreation that can be pursued in the "true outdoors". The plaintiff and his companion, in this case, were on a fishing expedition which is expressly included in the listing of covered recreations. The marshes which were the destination of the fishermen comprise undeveloped wilderness in a natural state. Although the boat ramp is a short distance from a state highway, its location is as close to the "true outdoors" as is feasible for a launching site.
"Plaintiff argues that the ramp is a manmade structure and, consequently, negates the idea that it can be found in the "true outdoors." That suggestion ignores two important considerations. First, the true outdoors test relates to the kind of recreation and not to the thing or place involved. As mentioned, the plaintiff was on a fishing expedition to a natural area. Secondly, the first paragraph of R.S. 9:2791 and 9:2795 demonstrate that structures as well as land itself are to be included in the ambit of protection.
"So long as the presence of a structure is consistent with the use of the property for the protected recreational purposes, the structure can fall within the protected ambit. The presence of the complex here boat ramp, wharf, and parking lot located at the end of a service road adjacent to fishing groundsis compatible with the recreational use being fostered by the legislation. Furthermore, the structure involved, a boat ramp, constitutes a minimal amount of disruption to the natural setting and the outdoor recreational idea.
"The court recognizes that immunity statutes are in derogation of a common right and are to be strictly construed. But strict construction cannot frustrate legislative purpose. It cannot be ignored that the State of Louisiana in this instance falls into the protected class by the clear language of the statutes and that the facts of this case meet the test of the case-made law.
"In overview, the court notes that the defendant herein, as owner of a boat ramp, is clearly within that class of persons singled out for protection so that outdoor areas would be available for recreational purposes. Legislative purpose was discussed in Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287, 1290, (La.1985). The statement of purpose of the act reads as follows:
'The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability *830 toward persons entering thereon for such purposes.'
The landowner, in this case, has taken creative steps to make land (marsh) and water areas available to the public for recreational purposes. This plaintiff was injured when entering thereon for such purposes. It is true that the court in Keelen said that the language of the statutes suggest the protection to extend to large tracts or areas of natural and undeveloped land or water. But nothing in the statute makes it read so restrictively. In actuality, the structure involved here was built on the edge of a large natural and undeveloped marsh. By its function, a boat ramp must be built on the edge of the water which it serves.
"For the reasons outlined, it is the finding of this court that the defendant herein, the State of Louisiana, through the Department of Transportation and Development, owed no duty to the plaintiff under the facts of this case by express legislative proscribement. Consequently, defendant can incur no liability for the injury resulting to the plaintiff from the condition of the premises."
Diligent counsel for the plaintiff have asserted additional arguments in this appeal not addressed by the trial court. Among several arguments, counsel assert that the construction of the boat ramp in question take the locality and activity outside of the ambit of protection afforded by the immunity statutes in question. The Louisiana Supreme Court considered the purpose of the two immunity statutes in Keelen v. State, Dept. of Culture, Recreation, 463 So.2d 1287 (La.1985). The court noted that the statement of purpose of LSA-R.S. 9:2795, contained in 1975 La. Acts, No. 615, Sec. 1, provided:
"The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."
In brief, the plaintiff asserts three reasons to support his contention that application of the immunity statutes in this case would not serve the purpose behind the law. These asserted reasons are:
1. The improvement to the land consisting of the boat ramp increased the hazard of the area under the State's control.
2. The statutes should not apply when the owner allows the property to be used for purposes not associated with recreational activities, e.g. commercial fishing activities.
3. The area in question is subject to public use as a matter of law so there is no need to encourage the State to open the area to the public for recreational purposes.
Before addressing these arguments specifically we note these observations. Judicial interpretations of the immunity statutes involved indicate a disposition of the courts to give exceptionally restrictive constructions which, perhaps, is as it should be. As a result, the courts will be continually presented with ingenious reasons for further restriction of the reach of the statutes. Nevertheless, the statutes have some meaning. In finding the ultimate meaning, many persuasive proffered exceptions must be rejected. When reasons for exception to the immunity statutes are brought forward, they should be carefully balanced against serving the intent and meaning of the statute.
Turning to the three points referred to above, we first address the contention that construction of the boat ramp increased the hazard of the state-owned area. We fail to appreciate the thrust of this argument. The thrust of the statutes is to grant immunity from tort liability. Adding improvements to land in its natural state should not lessen the immunity. If landowners never incurred liability in tort, the immunity statutes would not be needed. The statutes contemplate that landowners would otherwise incur liability. To suggest that increasing, or creating, hazards through land improvements takes them out of the reach of the statutes flies in the teeth of the effect intended by the legislature.
*831 If the thrust of plaintiff's argument is that any improvement of land renders the statutes inoperable as to such improvements, the argument is answered by the language of the statutes themselves. In the Keelen case the Supreme Court observed:
"The existence of some improvements on relatively undeveloped rural or semi-rural property does not change the character of the land so as to deprive its owner of the immunity granted by the statutes. Improvements such as shelters, toilet facilities, fireplaces, etc. are merely conveniences incidental to the use of the land for enumerated recreational activities and do not of themselves take property out of a rural, undeveloped classification. This view is reinforced by the fact that the definition of `premises' in La.R.S. 9:2791 and of `land' in La.R.S. 9:2795 include `buildings, structures and machinery.'"
The next argument we address is the contention that, by allowing use of the property for other than recreational uses such as commercial fishing, the State's immunity is somehow forfeited. Assuming that non-recreational use of the boat ramp does take place, we are not persuaded that this affects the case. As we see it, the inquiry in any given case is whether the permitted use in question is for recreational purposes on a noncommercial basis. In support of this particular argument the plaintiff cites Smith v. Southern Pacific Transp. Co., Inc., 467 So.2d 70 (La.App. 4th Cir.1985). All that case holds is that the City of New Orleans could not claim the benefit of the immunity statutes where a van-type truck struck a railroad overpass while traveling on a public street running through a city park. The operator or owner of the truck was not making a recreational use of the park or the street. The Smith case is not authority for the proposition for which it is cited.
The third argument mentioned above is that the boat ramp in this case was a public thing under Article 450 of the Louisiana Civil Code, is subject to public use under Article 452 and the banks of navigable rivers or streams are subject to public use. Plaintiff urges that inasmuch as the boat ramp is subject to public use as a matter of law, there is no need to provide incentive to the State to make the area open to free public use. In our opinion this suggestion of plaintiff does not follow. The statutes make no distinction between private and public landowners and there is no exemption of the State by the terms of the statutes. However, addressing the point of the argument itself, we take note of two factors. Insofar as inducement is concerned, were it not for the inducement offered by the immunity statutes, the State might well close certain lands to the public and it might refrain from constructing facilities on State lands such as boat ramps.
In a somewhat related argument the plaintiff refers to Justice Dennis' concurring opinion in the Keelen case. In Keelen the majority pretermitted the question of whether LSA-R.S. 9:2791 and 9:2795 apply to the State and its political subdivisions. The court found it unnecessary to decide the question because no immunity from liability was conferred based on the specific facts presented. In a concurring opinion reported at 482 So.2d 618, Justice Dennis took the position that LSA-R.S. 9:2795 applied to private landowners. Apparently the Supreme Court has not yet addressed the question. On the other hand, however, as noted in Smith v. Southern Pacific Transp. Co., Inc., supra, numerous court of appeal cases have held that these statutes are applicable to the State and its political subdivisions as landowners. We again followed this position in Adams v. State, 525 So.2d 55 (La.App.3d Cir.1988). We adhere to this position.
As an alternative assertion, the plaintiff contends that the "maritime nature" of this case requires application of admiralty law which would preempt application of the state immunity statutes in question. In Rodrigue v. Aetna Casualty & Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) the United States Supreme Court held that admiralty jurisdiction has not been construed to extend to accidents on piers, jetties, bridges *832 or even ramps or railways running into the sea. The court followed earlier cases including the circuit court case of Hastings v. Mann, 340 F.2d 910 (4th Cir.1965), certiorari denied, 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153 (1965). The Hastings case involved facts virtually the same as those in the case before us. There the plaintiff slipped and fell on a ramp at a small marina designed for launching small boats in Pamlico Sound, North Carolina. Admiralty jurisdiction did not apply in that case.
In a final effort to convince us that the two immunity statutes in question do not apply in this case, plaintiff urges that we consider the case of Eschete v. Mecom, 509 So.2d 840 (La.App. 1st Cir.), writ denied, 513 So.2d 821 (La.1987). In that case the plaintiff boat operator recovered damages for injuries which resulted from a collision with an oil well cribbing submerged under water in a private canal located on the defendant's property. The trial court and the Court of Appeal for the First Circuit found that the canal in question was of the type of property that would fall under the statutes as the canal was rural, undeveloped and remote. However, the trial court held the statutes did not apply because the abandoned oil well cribbing is not the type of condition or instrumentality normally encountered in the true outdoors. The Court of Appeal affirmed.
For whatever Eschete v. Mecom may stand, the case before us is distinguishable. It can hardly be said that a boat ramp is not normally encountered in the true outdoors. The true outdoors is precisely where many boat ramps are found. Recently we considered such a contention as plaintiff makes in the case sub judice in Adams v. State, supra. In Adams the plaintiff injured himself when he dove from a homemade diving platform attached to a tree into a canal at Cocodrie Lake Game & Fish Preserve. The plaintiff argued that the diving platform, under the rationale of the Keelen case, was not of the type normally encountered in the true outdoors "but rather, such an instrumentality is of the type usually found in someone's backyard." We did not deem Keelen-type facts or circumstances were presented. Likewise, in the case sub judice, Keelen-type facts and circumstances are not presented.

CONCLUSION
Counsel for both appellant and appellee have favored us with excellent briefs and oral arguments in this case. We have endeavored to give all contentions serious consideration bearing in mind that the statutes in question should be given restricted application. For the reasons we have stated, we conclude that the area in question and the boat ramp facility are within the purview of LSA-R.S. 9:2791 and 9:2795 as interpreted by the Louisiana Supreme Court. Accordingly, the State of Louisiana is immune from the claim asserted by plaintiff-appellant in this case.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] This observation amounts to a bit of judicial cognizance since the record does not supply these details but it is a matter of common knowledge.