544 So.2d 670 (1989)
Raymond CASTILLE and his Wife, Eva Zeno Castille, Plaintiffs-Appellants,
v.
Elina K. CHAISSON, United States Fidelity & Guaranty Company, ABC and XYZ Insurance Company and Lanier Cherry, Defendants-Appellees.
No. 88-135.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*671 Orida B. Edwards, Lafayette, for plaintiffs-appellants.
McBride, Foret, Rozas and Leonard, Robert R. McBride, Lafayette, Michael Tomino, Jr., Lafayette, for defendants-appellees.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
The question presented in this case is whether the immunity statutes exempting landowners from tort liability apply to an abandoned pond in a heavily wooded rural setting. In our opinion the statutes do apply to such premises.
This is a wrongful death and survival action case. Plaintiffs filed suit against defendants Elina Chaisson and her insurer, USF & G, for the drowning death of their 17-year-old son, Revis Castille, in a pond located on property owned by Chaisson in November 1985. Plaintiffs allege their causes of action in both strict liability and negligence. Plaintiffs subsequently added Lanier Cherry as a defendant, but the issue of Cherry's liability is not before us in this appeal.
Defendants denied liability and allege the contributory negligence of Revis Castille in trespassing on defendant's property and failing to use reasonable care and, alternatively, assumption of the risk by Revis Castille. Defendants Chaisson and USF & G then filed a motion for summary judgment based upon recreational use immunity under LSA-R.S. 9:2791 and 9:2795.[1]
*672 The trial court granted the motion for summary judgment and held that the property fell within the purview of LSA-R.S. 9:2791 and 9:2795. The plaintiffs appeal. We affirm.

FACTS
In November 1985 Revis Castille was hunting along railroad tracks near Scott, Louisiana. He left the track, entered some undeveloped wooded, private property and encountered a 20-by-60-yard man-made pond. The pond was thickly surrounded by trees and heavy undergrowth, was covered by algae and had steep sides of slick clay. There were a few pieces of an old fence around the pond. Revis fell into the pond and drowned, apparently because he was wearing heavy clothing and hip boots and the sides of the pond were steep and slick.

OPINION
Plaintiffs-appellants contend on appeal that the trial court erred in granting a summary judgment dismissing plaintiffs' suit against Chaisson and USF & G because there are two issues of material fact: whether the pond at issue constitutes an instrumentality or condition which one would normally encounter in the true outdoors and whether Revis Castille was an insured under the terms of the insurance policy issued by USF & G. Plaintiffs contend that the landowner immunity statutes do not apply to insurers of landowners.
The defendants have chosen to defend against this action at its threshold by invoking the immunity statutes. We do not have before us the question of whether defendants would be liable under the circumstances absent the immunity statutes.

CHAISSON'S IMMUNITY
A motion for summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Under jurisprudential interpretation of LSA-R.S. 9:2791 and 9:2795, a landowner is granted immunity from liability when the property where the injury occurred is rural or semi-rural and the injury-causing instrumentality *673 is of the type generally found in the "true outdoors." The Louisiana Supreme Court discussed factors determining application of these statutes in Ratcliff v. Town of Mandeville, 502 So.2d 566 (La. 1987):
"This court has described two factors to consider when determining whether the immunity provided by R.S. 9:2791 and 9:2795 is applicable to a given set of facts. First, the property where the injury occurred must be an undeveloped, nonresidential rural or semi-rural land area. Second, the injury itself must be the result of recreation that can be pursued in the `true outdoors.' Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So. 2d 1287, 1290 (La.1985)."
We recently gave consideration to these factors in Broussard v. State, D.O.T.D., 539 So.2d 824 (La.App. 3d Cir.1989). The purpose of the recreational use immunity statutes is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes. Acts 1975, No. 615.
The parties have not disputed that the property involved is an undeveloped, nonresidential rural or semi-rural area. The thrust of plaintiffs' argument is that the pond is not the kind of condition or instrumentality normally encountered in the true outdoors because it is man-made and has features which allegedly render it more dangerous than any natural pond. These features are its straight, slippery sides, its long and narrow shape, its depth, its location in a heavily wooded area, the green algae which covered and concealed the water and the fact that there were no warning signs posted although it is an area where people customarily hunt.
The immunity statutes apply to defendant's status as a landowner, and it is as a landowner that defendant has been sued. The plain language of LSA-R.S. 9:2791(A) states that a rural or semi-rural landowner owes no duty of care to keep such premises safe for entry or use by others for hunting or to give warning of such an injury-causing condition as a pond. See LSA-R.S. 9:2791(C) and 9:2795(A)(1) ("land" or "premises" includes waters). The only exceptions to this rule are where the injury was willful or malicious or where the premises are used as a commercial recreational enterprise for profit. LSA-R. S. 9:2791(B). These exceptions have not been alleged. Plaintiffs rely solely on their contention that defendant was negligent in failing to warn hunters of the existence of the pond and of its allegedly hazardous condition. Under the language of the statutes, defendant has statutory immunity against tort liability and owes no duty to warn hunters of the existence of the pond or of its allegedly hazardous condition. See also Stuart v. City of Morgan City, 504 So.2d 934 (La.App. 1st Cir.1987).
The fact that the pond is man-made rather than natural is not relevant to application of the immunity statutes. In Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287 at 1290 (La.1985), the court stated:
"Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury-causing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the `true outdoors.' When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection."
A pond is an instrumentality normally found in the true outdoors and is not usually found in someone's backyard. In any event, they are not usually found in urban backyards. Therefore, the immunity statutes *674 apply to man-made ponds as well as to natural ponds. See also, Broussard v. State, D.O.T.D., supra, and, Eschete v. Mecom, 509 So.2d 840 (La.App. 1st Cir.), writ denied, 513 So.2d 821 (La.1987) (rural, man-made canals were held to be the type of property which would fall under the recreational use immunity statutes).
Plaintiffs have emphasized that the pond at issue was unreasonably hazardous because it was man-made and that no natural pond would have such steep, slick sides and depth. Plaintiffs seem to believe that the fact that this pond was man-made in such a shape increased the hazard which would normally be encountered in a natural pond. This court addressed a similar argument in Broussard v. State, D.O.T.D., supra, and stated:
"The thrust of the statutes is to grant immunity from tort liability. Adding improvements to land in its natural state should not lessen the immunity. If landowners never incurred liability in tort, the immunity statutes would not be needed. The statutes contemplate that landowners would otherwise incur liability. To suggest that increasing, or creating, hazards through land improvements takes them out of the reach of the statutes flies in the teeth of the effect intended by the legislature." 539 So.2d at 830.
Moreover, whether the hazard was increased or not is beside the point. As stated above, defendant had no duty to warn hunters on her land of the existence of her pond or of its "hazardous condition."
Therefore, the trial court properly sustained defendant Chaisson's motion for summary judgment.

USF & G's IMMUNITY
Finally, plaintiffs contend that the recreational use immunity statutes grant only a personal immunity to defendant Chaisson as a landowner and do not apply to her insurer, USF & G. Plaintiffs ground this contention on the Louisiana Direct Action Statute, LSA-R.S. 22:655, which grants a direct action against insurers whether or not the insured is sued. Under LSA-R.S. 9:2791(A) and 9:2795(B) a landowner who permits any person to use his land for recreational purposes does not incur liability for any injury to the person or property of that person. Chaisson's contract with USF & G limits coverage of bodily injury and property damage arising out of ownership of the insured premises to sums which the insured is legally obligated to pay.
It is a well-established rule that where an immunity from suit is merely personal, an insurer is not entitled to plead such immunity as a defense to a suit under the direct action statute. Danzy v. U.S. Fidelity & Guar. Co., 380 So.2d 1356 (La.1980); Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191 (1935). Under the Louisiana Direct Action Statute the legislature intended to give the insurer the right to plead defenses which it could urge against the insured, but not defenses which are purely personal between the insured and the claimant and in no way growing out of or connected with the accident or policy. Danzy, supra; Edwards, supra.
In the case before us, Chaisson's immunity defense arises from the accident itself and the situs of the accidentfrom the fact that the accident occurred on her land while the injured person was using the land for a recreational pursuit. The defense is not purely personal between Chaisson and Castille in the manner of such immunities as father-son immunity, governmental immunity, charitable immunity, an insane person's incapacity to be liable for his torts or interspousal immunity. See Danzy, supra; A. Johnson, The Louisiana Direct Action Statute, 43 La.L.Rev. 1455 at 1490 (1983); Comment, The Louisiana Direct Action Statute, 22 La.L.Rev. 243 (1961). The recreational use immunity statutes create a defense of no cause of action which is available to USF & G as Chaisson's insurer. See McCain v. Commercial Union Ins. Co., 592 F.Supp. 1 (W.D.La.1983). Therefore, the trial court properly sustained defendant USF & G's motion for summary judgment.

*675 DECREE
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2791 and 9:2795 provide as follows:

§ 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon. Acts 1964, No. 248, §§ 1-3.
§ 2795. Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purpose for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.
Acts 1975, No. 615, §§ 2 to 5. Amended by Acts 1986, No. 967, § 1; Acts 1986, No. 976, § 1.