552 So.2d 20 (1989)
Marie HOLDER, Plaintiff-Appellee,
v.
LOUISIANA PARKS SERVICE, LOUISIANA DEPARTMENT OF CULTURE, RECREATION & TOURISM, Defendant-Appellant.
No. 88-787.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Writ Denied January 12, 1990.
*21 Oliver J. Schrumpf, Sulphur, for plaintiff-appellee.
David C. Kimmel, Asst. Atty. Gen., Baton Rouge, for defendant-appellant.
Before YELVERTON, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether the tort immunity statutes relative to recreational lands apply to an accident which occurred on a shell covered campsite at Sam Houston Jones State Park.
On August 6, 1983, Mrs. Marie Holder (hereinafter plaintiff) and her friend, Mr. Walter Schrumpf, drove to Sam Houston Jones State Park in Calcasieu Parish, Louisiana (hereinafter the Park) for a weekend camping trip. The campsite was approximately eight feet wide by twenty feet deep and the ground was covered with white clam shells. Plaintiff saw ducks swimming in a marshy lake at the back of the campsite *22 and, as she walked to see them, she stepped in a hole and fell, injuring her right arm and shoulder. Plaintiff filed suit for damages against the Louisiana Parks Service, a subdivision of the Louisiana Department of Culture, Recreation and Tourism, of the State of Louisiana, the owner and operator of the Park. Defendant answered plaintiff's petition for damages and asserted the defense of tort immunity arising from the recreational land immunity statutes, La.R.S. 9:2791 and La.R.S. 9:2795. Defendant then filed a Motion for Summary Judgment based on the recreational immunity statutes. The trial court granted defendant's motion and dismissed plaintiff's suit. Judgment was signed on June 27, 1985. Plaintiff appealed and this court, in Holder v. Louisiana Parks Service, Inc., 493 So.2d 275 (La.App. 3 Cir.1986), held that "[t]here remains a material issue as to whether the park, its location and surrounding developments qualifies it for the immunity provided for by the statutes." Id. at 278. Accordingly, this court reversed the judgment of the trial court and remanded the case for further proceedings.
On January 6, 1987, defendant filed a second Motion for Summary Judgment, to which were attached new affidavits, and reurged the immunity granted for land used for recreational purposes. The trial judge denied defendant's motion and judgment was signed on March 2, 1987. Defendant sought supervisory relief from this court for the denial of their second motion for summary judgment and this relief was denied. Holder v. Louisiana Parks Service, Inc., an unreported decision bearing Number 87-510 on the Docket of this Court dated May 22, 1987.
A trial on the merits was held on March 3, 1988. The trial court found defendant liable but also found plaintiff 50% contributorily negligent. The trial court rendered judgment in favor of plaintiff for the sum of $19,750.00 dollars, with legal interest from date of judicial demand, until paid, expert witness fees and court costs. A formal written judgment was signed on April 11, 1988. Defendant then timely filed this suspensive appeal.

FACTS
Plaintiff and Mr. Schrumpf arrived at the Park at approximately 6:00 P.M. on August 6, 1983. When they arrived at the main gate to the Park, Terrence Delaine, the park ranger, told them that the camping area was very crowded and that there was only one campsite available. The ranger then told them to inspect the site before they paid for it to make sure it was suitable. Plaintiff and Mr. Schrumpf located the site in area # 1 and decided it was acceptable. Plaintiff got out of the camper and remained at the site while Mr. Schrumpf returned to the front gate to pay the site camping fee. Plaintiff was examining the layout of the campsite for electrical and water connections, picnic table, etc., when she noticed some ducks in a marshy lake near the back of the site. Plaintiff continued walking toward the ducks while looking around the campsite when she stumbled in a hole and fell to the ground injuring herself.
A Ward One Fire Department emergency vehicle and an ambulance were called to the scene. The ambulance took plaintiff to the West Calcasieu-Cameron Hospital emergency room where her arm was x-rayed, placed in a sling, and plaintiff was referred to Dr. William Akins, an orthopedist. Dr. Akins diagnosed plaintiff's injury as a three-part fracture of the right humerous and recommended physical therapy. Her injury healed approximately three months later.
Plaintiff testified that the hole she stepped into had clam shell in it, was about six to eight inches deep, and was round with gradual sides. Plaintiff further stated that because it was evening when they arrived at the campsite, the area was shaded by surrounding trees.
The park ranger testified that he went to the campsite after the accident to inspect the hole. The hole, in his opinion, had an oblong shape and was approximately six to seven inches deep. He also stated that the hole appeared to have been scratched out by a child or an animal.
*23 The district manager for the Office of State Parks examined the hole and stated that:
"[T]he `hole' was a gradual indentation in the shell which was approximately five to six inches at the deepest part and had a diameter of fourteen to sixteen inches. The indentation was covered throughout with clam shell and was not dissimilar from uneven spots in the circular drive which connected the various campsites at camping area 1."
The title to the property on which the Park is located is in the name of the State of Louisiana, through the Louisiana State Parks Commission (now the Office of State Parks, Department of Culture, Recreation and Tourism).
The affidavit of Randall Trahan, who is the chief of operations for the Office of State Parks, was admitted into evidence at the trial. He stated that the Park is located off of Louisiana Highway 378, eight miles north of Lake Charles, Louisiana and four miles west of Moss Bluff, Louisiana, adjacent to the West Fork of the Calcasieu River. The Park contains 1,087 acres of mixed hardwood and longleaf pine forests. The Park has seventy-three campsites, twelve overnight cabins and a day-use area. The main entrance road to the Park is blacktopped. All roads inside the Park's camping areas are dirt which are covered with clam shells. The Park maintains eleven full time employees. There is a fee for the use of the Park. Generally, the fee is $1.00 per day for all motor vehicles except buses which are charged $10.00 per day. Senior citizens are entitled to a $2.00 per night discount on the use of the camping facilities. The testimony of Nancy Reed, the Park's Project Coordinator whose duties include the coordination of funds, was also admitted by affidavit. She stated that revenues collected and the expenditures for the Park for the years 1981, 1982, and a portion of 1983 were as follows:

Fiscal Year Revenue Collected EXPENDITURES
1981-1982 $153,932.00 $304,771.00
1982-1983 $136,113.00 $289,431.00
7/1983-12/1983 $ 60,680.00 $164,856.00

Plaintiff's accident occurred inside an area known as a camping "spur". This camping space is adjacent to an inside roadway, is rectangular in shape and is about twenty feet deep by eight feet wide. The area is designed to accommodate a camper, trailer, or recreational vehicle. The base of this camp site, as well as that on the adjacent roadway, is dirt which is covered with clam shell to provide stability and to prevent washout. The camping spur is surrounded on both sides by wooded forest and the front side is adjacent to the roadway. One side has a hook-up for electrical and water supplies and a picnic/recreation area. The rear of the site is bordered by a marshy lake. Surrounding the camping spur on the ground are concrete curb-like borders which keep the dirt and shell in place.
The Park keeps a clam shell stockpile which it uses to resurface and repair roads, and to fill in holes. An affidavit of John Davis, a sale representative for Dravo Basic Materials Co., Inc., which was also introduced by the plaintiff, stated that the type of clam shell used in the Park is primarily for road construction and erosion control. He stated that the clam shell found at the Park was not naturally occurring and must have been brought to the Park.
The Park Manager testified that it was very difficult to keep the roads and campsites level and that the reason the Park used shell to cover the roads was because it was "the closest thing to being natural" that they had. He stated that, if the Park did not put shell down on the roads and campsites, everything would wash away and there would not be any place to camp.
At the time of the accident, there was no written policy which required regular inspections of the Park and campsites. However, the rangers were given a maintenance *24 check list and were told to report any problems they spotted as they made their rounds for inspection.
After a trial on the merits, the trial judge held in favor of plaintiff, found her damages to be $39,500.00, and assessed her comparative negligence at 50%. Defendant has appealed alleging that the court should have found the recreational land tort immunity statutes applicable and found no liability on their part. Plaintiff has filed what she entitles an "Original Answer and Brief on Behalf of Appellee," wherein she contends that the trial court was correct in refusing to apply the recreational land immunity statutes. Additionally, plaintiff argues that, should this court find that the immunity statutes do apply, that they are unconstitutional. Additionally, plaintiff argues that the trial court erred in assessing her negligence at 50%.
Under La.C.C.P. Art. 2133, an appellee seeking relief from the judgment rendered in the trial court is required to file an answer within fifteen days of the return date or lodging of the record, whichever is later. A brief submitted by appellee does not satisfy the requirement of this article as it is neither an answer nor an appeal. Miller v. Ryder, 540 So.2d 548 (La.App. 3 Cir.1989); Arrow Fence Company, Inc. v. DeFrancesch, 466 So.2d 631 (La.App. 5 Cir.1985), writ den., 468 So.2d 575 (La.1985). An appellee who believes himself aggrieved by a judgment in his favor, in order to place himself in a position to seek an amendment, must expressly answer the appeal in a written motion and can not merely raise an issue by a brief. Miller v. Ryder, supra; Brewington v. Louisiana Dept. of Corrections, 447 So.2d 1184 (La.App. 3 Cir.1984), writ den., 449 So.2d 1348 (La.1984). Plaintiff's "Answer and Brief" were not timely filed in accordance with La.C.C.P. Art. 2133 and thus cannot be considered an answer to defendant's appeal. Therefore, we are precluded on this appeal from considering the issues raised in plaintiff's "Answer and Brief."
For this reason, the only issue presented by this appeal is whether the statutes that give tort immunity to landowners who allow persons to use their land for recreational purposes apply to the land involved in this case.

DECISION
La.R.S. 9:2791 provides as follows:
"§ 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word `premises' as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon."
La.R.S. 9:2795 provides:
"§ 2795. Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries
A. As used in this Section:

*25 (1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes."
The Louisiana legislature in 1964 enacted La.R.S. 9:2791 in order to protect landowners and occupants against claims by persons who use their property for "hunting, fishing, camping, hiking, sightseeing or boating." 1964 La.Acts No. 248 §§ 1-3. This statute was apparently enacted to legislatively overcome the decision of Daire v. Southern Farm Bureau Casualty Ins. Co., 143 So.2d 389 (La.App. 3 Cir. 1962), writ den., October 9, 1962, which found the owner of a fishing camp liable for injuries sustained by a guest when he fell from a defective porchway. The statute essentially requires a different degree of care for the owners, lessees, or occupants of recreational property, and states that an owner of premises owes no duty of care to keep his premises safe for entry or use by others for hunting, fishing, camping, etc., or to give warning of any hazardous conditions to persons entering for such purposes; and that the owner giving permission to others to enter the premises for such recreational purposes does not extend any assurance that the premises are safe for such purposes. The statute does not *26 exclude liability for any deliberate and willful or malicious injury and does not apply to premises used principally for a commercial recreational enterprise for profit.
La.R.S. 9:2795 which was enacted in 1975 further expands the landowner's protection. This statute provides that the landowner does not extend any assurance that the premises are safe for any purpose and grants immunity to the landowner for any tort claim by persons who enter their property for "recreational purposes." "Recreational purposes" is given an exceptionally broad definition in La.R.S. 9:2795 A(3) where the statute states:
"`Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites." (Emphasis added.) La. R.S. 9:2795 A(3).
This statute, while not applicable to an owner of commercial recreational developments or facilities, is nonetheless applicable to owners who, "with or without" charge allow persons to use his land for recreational purposes. Like La.R.S. 9:2791, La. R.S. 9:2795 does not exclude liability for willful or malicious failure to warn against a dangerous condition.
The purpose of these statutes is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." 1975 La.Acts No. 615, § 1.
A plain reading of La.R.S. 9:2791, coupled with the fact that the legislature enacted with La.R.S. 9:2795 a second more expansive immunity statute, can only evidence an intent on the part of the legislature that these statutes are to grant a broad immunity from liability.[1] Additionally, the legislative history of these statutes dictates that they should be applied to confer immunity upon owners of all property used for recreational purposes from those who are injured while using such property.
The defendant in this case as owner of the Park and, as lessor of a portion of such premises, did not, by law, extend any assurances to plaintiff that the premises were safe for camping or for viewing scenic sites. There have been no allegations that defendant's conduct was deliberate, willful or malicious so as to preclude immunity. The affidavit of Nancy Reed clearly shows that the Park was not a commercial profit making enterprise. Consequently, we find that under either La.R.S. 9:2791 or La.R.S. 9:2795, defendant owed no duty and incurred no liability to plaintiff for her injuries.
Even applying the more restrictive view of these statutes espoused by the Louisiana Supreme Court in Keelen v. State, Dept. of Culture, Recreation, 463 So.2d 1287 (La.1985), we find that the facts in this case require the grant of immunity. The Supreme Court in Keelen narrowly construed the immunity statutes and held that they applied only in limited and restricted circumstances. The two factors to consider, according to Keelen, when determining whether the immunity provided by La.R.S. 9:2791 and La.R.S. 9:2795 is applicable to a given set of facts are: (1) the property where the injury occurred must be an undeveloped, nonresidential, rural or semi-rural land area; and (2) the injury must be the result of recreation that can be pursued in the "true outdoors." Keelen, supra, at page 1290.
As to the first part of the test, plaintiff does not take issue with the fact that the *27 Park should be classified as rural or semi-rural property. The record clearly shows that the Park comprises 1,087 wooded acres and is located seven miles from the nearest town of Moss Bluff, Louisiana. The size, naturalness and remoteness from populated areas all attribute to the categorization of this property as rural or semi-rural property. Keelen, supra.
Plaintiff's argument focuses on the second part of the Keelen test, that is, whether or not the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors. Plaintiff contends that the instrumentality which caused her injuries was the clam shell covering on the ground. Further, she contends that the clam shell which was brought in to the park was not naturally occurring on the ground and therefore is not of such a nature as is found in the true outdoors. For these reasons, she argues the statutes do not apply.
Defendant contends that the instrumentality which caused plaintiff's injuries was the hole in the shell covered parking area and that this instrumentality is within the purview of the immunity statutes.
Plaintiff and her friend, in this case, were on a weekend camping trip which is expressly included in the statutes' listings of covered recreations. The camping spur where the accident occurred was located in undeveloped wilderness in a natural state. The ground was covered with clam shell and surrounded by concrete curb-like borders both of which provided stability and prevented ground erosion. Plaintiff stumbled and fell because she stepped in a hole she claims was camouflaged by the clam shell that was in and around it.
A review of prior decisions of this court leads to the conclusion that this hole in the ground which was covered with clam shell is certainly a type of instrumentality that is found in the true outdoors. In Adams v. State of Louisiana, 525 So.2d 55 (La.App. 3 Cir.1988), this court held that a homemade diving platform situated in a tree on the banks of a canal was an instrumentality found in the true outdoors. In Broussard v. Dept. of Transp. & Dev., 539 So.2d 824 (La.App. 3 Cir.1989), a boat-ramp was held to be an instrumentality found in the true outdoors, and in Castille v. Chaisson, 544 So.2d 670 (La.App. 3 Cir.1989), a man-made pond was found to be an instrumentality found in the true outdoors.
The statutes themselves indicate that structures, roads, private ways, and equipment thereon are to be included in the ambit of protection. La.R.S. 9:2795 A(1); La.R.S. 9:2791 C.
As we stated in Broussard v. Dept. of Trans. & Dev., supra:
"So long as the presence of a structure is consistent with the use of the property for the protected recreational purposes, the structure can fall within the protected ambit. The presence of the complex here-boat ramp, wharf, and parking lot located at the end of a service road adjacent to fishing grounds-is compatible with the recreational use being fostered by the legislation. Furthermore, the structure involved a boat ramp, constitutes a minimal amount of disruption to the natural setting and the outdoor recreational idea." Broussard v. Dept. of Trans. & Dev., 539 So.2d 824, at page 829 (La.App. 3 Cir.1989).
Obviously, had plaintiff's accident been caused by a hole in the ground or a tree root in the ground, there would be no doubt that that would be an instrumentality found in the true outdoors. We do not find that just because the Park covered the ground with clam shell that it takes the property out of the purview of the statutes.
The clam shell covered parking area is consistent with the use of the property as a campsite. The clam shell was placed there for the convenience of the campers. Without the shell covering, the ground would become boggy and eventually wash away. Moreover, the clam shell, which is dredged from the bottom of lakes, is a natural substance and does not disrupt the natural setting as would blacktop or concrete. Accordingly, we conclude that the immunity statutes are applicable to defendant's property even applying the more restrictive test set forth in Keelen. *28 For these reasons, we find that the defendant, as owner of the land on which plaintiff had her accident, is clearly within that class of persons the legislature singled out for protection so that outdoor areas would be available to the public for recreational purposes. For this reason, the judgment of the trial court is reversed. All costs of the trial and appellate courts are taxed against plaintiff-appellee.
REVERSED AND RENDERED.
NOTES
[1] As further evidence of the legislature's intent that the statutes are to be construed broadly, see Act No. 534 of the 1989 Regular Session wherein La.R.S. 9:2791 and La.R.S. 9:2795 were again amended to provide that the immunity of owners of property used for recreational purposes is not affected by the granting of a lease, right of use, right of occupancy, or by posting of the premises so as to limit the use of the premises to persons other than the entire public. These amendments were not in effect at the time of the accident sued on herein.