598 So.2d 397 (1992)
Ferrell BURAS and Denise Buras
v.
UNITED GAS PIPELINE COMPANY and Matte Walker.
No. 91-CA-1489.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
Rehearing Denied June 17, 1992.
*398 Vance E. Ellefson, Blaine A. Moore, Ellefson & Pulver, Metairie, for appellant.
Christopher J. Bruno, Robert J. Bruno, Philip F. Cossich, Jr. Bruno & Bruno, New Orleans, for appellee.
Before BARRY and CIACCIO, JJ., and JAMES C. GULOTTA, J. Pro Tem.
CIACCIO, Judge.
This is an appeal from a judgment awarding damages to an operator of a fishing skiff for an injury that resulted from a collision with a cluster of piling located in a right-of-way obtained by defendant.
In September, 1988 Ferrell Buras and his cousin were travelling in a skiff on a canal in an area known as Tante Phine Pass south of Venice, Louisiana. The two men testified they were going bass fishing in the nearby bays and were transporting a 12 foot pirogue which was balanced across the center of the skiff. As the men were travelling down the center of the canal, the pirogue, which extended three to four feet on either side of the skiff, struck a cluster of piling located near a gas pipeline which crosses the canal bottom. The pirogue swung around and hit plaintiff, knocking him down in the skiff. Both the piling cluster and the pipeline were located within a seventy-five foot right-of-way obtained from the owner of the land by United Gas Pipeline Company.
As a result of this accident, Mr. Buras suffered injury to his ribs, kidney and elbow, and a back injury which subsequently required corrective surgery. On January 3, 1989 Ferrell Buras and Denise Buras filed a petition for damages against United Gas Pipeline Company (hereinafter *399 "UGPLC") and Matte Walker alleging that defendants owned and were responsible for the maintenance of the cluster of pilings allegedly causing the injuries herein. Denise Buras voluntarily dismissed her claim for loss of consortium as she and plaintiff had never been married. Defendants filed an answer and subsequently a motion for summary judgment on the issue of liability which the trial court denied on September 8, 1989. After a bench trial which commenced on October 17, 1990, the defendant was held liable for the damages resulting from the injury. Defendant Matte Walker was dismissed from this lawsuit after the presentation of plaintiff's case.
On appeal, defendant asserts three assignments of error by the trial court:
I. The trial court should have granted UGPLC's Motion for Summary Judgment on the application of L.S.A.-R.S. 9:2791 and 9:2795 and dismissed UGPLC from this lawsuit.
II. The trial court found fault on behalf of UGPLC although the record is devoid of evidence of ownership of the five pile cluster by UGPLC. Such a finding constitutes manifest error.
III. The trial court's judgment, rendered without written reasons, grants damages in an amount not supported by the weight of the evidence in that the plaintiff was found only 15% at fault, and in that evidence introduced at trial on the subject of plaintiff's lost income was inadmissible.
I. APPLICABILITY OF LA.R.S. 9:2791 AND 9:2795
On motion for summary judgment and on appeal, defendant argues that there is no basis for liability based on the immunity provisions of LSA-R.S. 9:2791 and 9:2795, also known as the "recreational use statutes." Under judicial interpretation of these statutes, a landowner is granted immunity from tort liability for an injury sustained during recreational use of the property when the property where the injury occurred is rural or semi-rural and the injury-causing instrumentality is of the type generally found in the "true outdoors." Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). The Supreme Court in the Keelen case stated:
The statement of purpose of La.R.S. 9:2795 is contained in 1975 La. Acts., No. 615, Section 1 and provides:
The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, nature study, etc. can normally be accommodated only on large tracts of areas of natural and undeveloped lands located in thinly populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Keelen, supra, 463 So.2d at 1290.
These statutes limit the rights of plaintiffs to bring tort actions and therefore must be strictly construed. Id., at 1289.
Appellant argues that the property in the instant case is remote, undeveloped and non-residential so as to qualify for the statutory immunity. Appellant further argues that the type of activity pursued by plaintiff at the time of his injuryfishingis a recreational use of the land which can only be accomplished in the true outdoors.
In support of their position, appellant cites Castille v. Chaisson, 544 So.2d 670 (La.App. 3d Cir. 1989) which affirmed *400 the trial court's grant of immunity for the death of a recreational hunter which occurred in a man-made pond on defendant's property. Although the court in Castille found that the body of water in that case is the type of instrumentality contemplated by the statute, we find that based on the holding in Keelen, each tract of property must be categorized based on its individual characteristics.
In the present case, plaintiff was injured on a canal in an area near Venice, Louisiana known as Tante Phine Pass. It is undisputed that the canal where the injury occurred is a navigable waterway. Evidence presented at trial indicates that the canal is located in an area which allows navigation from the Mississippi River to the Gulf of Mexico.
In 1950, defendant UGPLC acquired a seventy-five foot right-of-way for the construction of a natural gas transmission pipeline in Plaquemines Parish. The right-of-way included all of Section 36, East of Red Pass. Pursuant to the right-of-way agreement, UGPLC proceeded to build and install the gas pipeline by constructing a 36-foot wide canal which was subsequently back-filled after the installation of the pipeline. The pipeline also traverses the bottom of a canal which existed prior to the construction of the pipeline by UGPLC. It is this pre-existing canal on which plaintiff was travelling at the time of the accident. The five-pile cluster which plaintiff struck was located in this canal approximately 9-12 feet from the point where the pipeline traverses the canal. A similar cluster of piling was located approximately 40 feet from the first cluster in the area which was back-filled and in very close proximity to the pipeline itself. Both clusters were located in Section 36, East of Red Pass, which was covered by UGPLC's right-of-way agreement.
We find that the canal on which plaintiff was injured in this case is not contained in a private tract of land which the landowner opened for recreational purposes. Rather, it is a navigable waterway which affords access from the Mississippi River to the Gulf of Mexico. Further, the five-pile cluster located in the center of the canal several feet from a gas pipeline is not the type of instrumentality which is found in undeveloped tracts of land.
Under these circumstances, we find that the area in which plaintiff was injured is not the type of area which the legislature intended to be covered by the recreational use statutes. We conclude that an injury which occurs on a navigable waterway such as the one here is not subject to a defense under La.R.S. 9:2791 and 9:2795. Therefore, UGPLC, as the holder of the right-of-way which traverses a navigable canal, cannot assert these statutes to avoid liability in the instant case.
II. LIABILITY OF UGPLC
Appellant next contends that the judgment of the trial court is against the weight of the evidence as plaintiff failed to prove UGPLC's ownership of the five-pile cluster. We do not agree.
UGPLC denies ownership of the cluster of pilings which caused the injury herein. Appellant argues that plaintiff's showing that the cluster was located in UGPLC's right-of-way does not prove defendant's ownership of the cluster.
At trial, plaintiff introduced the testimony of Sonny Starns who was qualified by the court in the field of pipeline construction, maintenance and safety. Although there was no evidence of UGPLC's obtaining the required permit from the Corps of Engineers for the construction of this cluster in the navigable waterway, it was Mr. Starns' opinion that the pilings were owned by UGPLC and were placed there during the construction of the gas pipeline at the direction of UGPLC. Mr. Starns testified that a similar cluster existed in the area approximately forty feet from the cluster located in the canal. He stated that the placement of these clusters in the right-of-way was consistent with the need for a stationary point for the mooring of the quarter boats and other barges during the construction of the pipeline. Mr. Starns stated that if the cluster had been present prior to the construction of the canal and pipeline, it would have impeded UGPLC's *401 ability to lay the pipeline and should have been removed. Further, he testified that the possibility that the pilings were driven into the canal after the construction of the pipeline at a distance of only 9-12 feet from the existing gas pipeline was very unlikely.
Mr. Starns further examined the construction report completed by the contractor at the time of the laying of the pipeline. According to Mr. Starns, this document indicated that the materials and equipment used by the contractor who constructed the pipeline for UGPLC was consistent with the construction of the piling clusters.
In addition, Mr. Starns examined photographs of the five pile cluster taken the day after the accident which indicated a UGPLC sign posted to the pilings. According to Mr. Starns, this signage is consistent with UGPLC's ownership of the pilings as UGPLC is required to identify their gas line and supply a telephone number in case of emergency.
Under these circumstances we find that the evidence presented at trial, although circumstantial, was sufficient to prove UGPLC's ownership of the piling cluster. A UGPLC sign was posted to the cluster at the time of the accident. The location of the cluster was consistent with serving as a mooring point for pipeline construction barges. It is unlikely that the cluster existed prior to or was placed in the waterway after the construction of the pipeline by UGPLC.
Although no written reasons for judgment were assigned, the trial court evidently concluded that UGPLC owned the five pile cluster. This is a finding of fact which cannot be disturbed absent manifest error. Our review of the record indicates that the evidence presented supports the conclusion of the trial court, and we decline to disturb this finding which was well within its discretion.
III. DAMAGES
The trial court rendered judgment awarding plaintiff damages in the amount of $272,259.79, subject to a fifteen percent reduction for plaintiff's comparative fault.
Appellant contends that the evidence presented at trial showed that plaintiff was more than fifteen percent at fault as found by the trial court. Appellant also contends that plaintiff's records on lost income were unreliable and inadmissible.

Comparative Fault
Plaintiff testified at trial that he was operating an open deck lake skiff during the early morning hours on September 23, 1988. He stated his cousin, Randy Harvey, was present with him in the skiff and was seated on the left side of the boat, facing Mr. Buras. The pair had brought a 12 foot pirogue with them to assist in the fishing effort which was placed across the skiff. Mr. Buras stated that neither Mr. Harvey nor the pirogue blocked his vision.
Mr. Buras further stated it was "pitch black dark" that morning and he was navigating the skiff at approximately 15 miles per hour by the banks of the waterway. The running lights on the side of the skiff were functioning, but Mr. Buras stated he did not use the headlight on the boat as he believed it was not necessary. He also stated that Mr. Harvey had a battery-operated flashlight with him which was not used. Both Mr. Buras and Mr. Harvey testified that visibility was good on the morning of the accident.
Appellant argues that Mr. Buras' failure to utilize the lighting available to him, his rate of speed under the circumstances and the manner in which the pirogue was being transported constitute negligence on Mr. Buras' part. In support of this argument, UGPLC introduced the testimony of Sheldon Held, a marine surveyor, who testified that Mr. Buras' failure to use the lighting available to him was in violation of the Coast Guard rules of navigation and that the speed at which the skiff was travelling was not prudent in light of the poor visibility that evening. He also testified that the manner of transporting the pirogue across the skiff without tying it down or otherwise securing it was improper. Mr. Held also testified that the seating of Mr. Harvey facing the rear of the boat rather than *402 the front violated navigational rules which require a boat operator to have lookout other than the operator of the boat.
Plaintiff introduced the testimony of Raymond Bollinger who was qualified as an expert in small craft navigation, and general marine safety. Mr. Bollinger testified that the speed of Mr. Buras' boat on the morning of the accident was "abundantly prudent." He further stated that Mr. Buras' method of transporting the pirogue was a "75 year old custom of the area and ordinarily a prudent way of transporting the pirogue." He did not believe the location of the pirogue would have obstructed Mr. Buras' vision, nor did he believe Mr. Harvey's position on the boat was improper as there are no regulations requiring a lookout. With regard to the use of lighting, Mr. Bollinger testified that the use of only the running lights on the boat was proper. He stated that the use of other lighting on a dark morning would impair the operator's night vision, and the intermittent use of a flashlight would violate navigational regulations. Mr. Bollinger testified that in his opinion the accident was caused by an unmarked obstruction in the navigable freeway.
Although the expert testimony with regard to the reasonableness of Mr. Buras' actions were conflicting, the trial court apparently decided to credit the testimony of Mr. Bollinger rather than Mr. Held. Mr. Bollinger's testimony was supported by the uncontradicted testimony of the plaintiff who stated that his vision was clear on the night of the accident. We have reviewed the record in its entirety and find the trial court's evaluation of the evidence to be reasonable. The evidence presented at trial supports the finding that the accident was primarily caused by the presence of the unlighted cluster of piling located in the navigable waterway. We do not find the trial court's assessment of comparative fault on the part of Mr. Buras in operating the skiff was manifestly erroneous.

Lost Income
Appellant next argues that plaintiff failed to properly establish proof of damages of lost income. The trial court in the instant case rendered a lump sum award for damages of $272,259.79.
Appellate review of such award is limited to a determination of whether the trier of fact abused its much discretion and whether the award may be considered excessive. Reck v. Stevens, 373 So.2d 498 (La.1979). A lump sum award of damages is normally presumed to award all items of damages claimed, and the burden of proving that the fact finder clearly abused its much discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Sorapuru v. Simon, 380 So.2d 1225 (La.App. 4th Cir.1980). However, each case must be determined on its own particular facts and circumstances. Id.
A claim for lost wages need not be proven with mathematical certainty; it only requires such proof as reasonably establishes the claim. This may consist of the plaintiff's own reasonable testimony. Sherlock v. Berry, 487 So.2d 555 (La.App. 4th Cir.1986).
In the present case, plaintiff suffered injuries to his ribs, kidney, elbow and back. He was subsequently diagnosed as having a bruised kidney, two fractured ribs and a contusion of his right leg. Mr. Buras also sustained a herniated lumbar disc and aggravation of a pre-existing degenerative disc as a result of this accident. As a result of these back injuries, Mr. Buras underwent a neurotomy and a microsurgical laminectomy for the removal of the herniated disc. Mr. Buras suffered from chronic neck pain and was given a permanent and partial 10% to 15% total body impairment. Dr. Kenneth Vogel, the neurosurgeon who performed the laminectomy, stated that plaintiff should avoid repetitive bending or activities which required him to lift more than 50 pounds.
In his petition, plaintiff itemized his damages as follows:

*403
Physical pain and suffering......$125,000
Mental anguish ..................$125,000
Medical expenses.................$ 75,000
Loss wages.......................$100,000
Punitive damages ................$100,000

There was no evidence presented at trial regarding plaintiff's entitlement to punitive damages. The evidence presented at trial indicates plaintiff's medical expenses were over $70,000.00. Further, this court has previously held that a plaintiff who suffered a herniated disc resulting in a laminectomy was entitled to a general damage award of at least $100,000.00. Redondo v. Consol. Freightways Corp., 529 So.2d 1296 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988).
With regard to loss of income, plaintiff testified he had only engaged in one occupation in his entire life: fishing. Although he testified he did not complete federal tax returns, he testified he earned approximately $15,000 per year as a fisherman, and in a good year could earn as much as $30,000. This testimony was supported by the testimony of David Danos who testified that a fisherman in the Venice area could expect to earn at least $15,000 per year, and that Ferrell Buras was one of the best fishermen in the area.
Plaintiff also testified that he was unable to continue fishing due to the limitations following his back surgery. Bobby Roberts, a vocational evaluation specialist, also testified that plaintiff could not return to his former job as a fisherman based on his physical limitations.
Both plaintiff and defendant submitted economists' reports to calculate plaintiff's past and future lost wages. Melville Wolfson, plaintiff's economist, found plaintiff's worklife after the accident to be approximately 20 years and found his loss of earning capacity based on an annual income of $30,000.00 prior to trial to be $61,972.00, and the future loss subsequent to trial to be $345,099.00. Further, Dr. Wolfson calculated that the past loss based on a $15,000.00 annual income was $30,986.00 and future loss was $172,549.00. Kenneth Boudreaux, defendant's economist, found plaintiff's worklife after the accident to be 15 years, and found his past loss based on an annual income of $2,866.67 to be $5,547.65 and his future loss to be averaged at $25,427.21.
Based on plaintiff's testimony as well as the expert testimony introduced by both parties, we conclude that the trial court's award of damages for loss of earning capacity is not excessive. Although appellant argues that unidentifiable seafood sales receipts were improperly admitted into evidence by the trial court, there is no evidence to indicate that the trial judge relied on these receipts in rendering his judgment. Rather, the trial court apparently relied on plaintiff's uncontradicted testimony of his earnings prior to the accident in the amount of $15,000 annually, which would support an award for lost wages in the amount of over $200,000 based on the most conservative life expectancy of 15 years. Based on the other items of damages claimed, it is clear that the trial court awarded plaintiff somewhat less than this amount.
The lump sum damage award which is presumed to include all elements of damages claimed does not appear to be excessive based on the evidence presented at trial. The minimum general damage award of $100,000.00 coupled with the proven medical expenses of over $70,000.00 leaves approximately $100,000.00 for lost wages to amount to the total judgment of $272,259.79. Such an amount for plaintiff's loss of earning capacity is well supported by the record before us. We fail to find an abuse of the trial court's much discretion in rendering the award of damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to bear all costs of this appeal.
AFFIRMED.
BARRY, J., agrees with the result.
BARRY, Justice, agreeing with the result.
Very simply, this plaintiff was in his boat traveling in a navigable waterway when the boat struck a cluster of piles erected by the defendant.
*404 The piles were in the middle of a navigable waterway and unmarked.
The defense is frivolous.