681 So.2d 1301 (1996)
Lillie CHAPMAN, et al.,
v.
The REGIONAL TRANSIT AUTHORITY/TSMEL, et al.
No. 95-CA-2620.
Court of Appeal of Louisiana, Fourth Circuit.
October 2, 1996.
Rehearings Denied December 19, 1996.
*1303 Robert G. Harvey, Sr., Thomas Corrington, Tamara Kluger Jacobson, New Orleans, For Plaintiffs/Appellees.
Kathy Lee Torregano, Berrigan, Litchfield, Schonekas And Mann, New Orleans, for Defendants/Appellants.
Before KLEES, PLOTKIN and WALTZER, JJ.
PLOTKIN, Judge.
Defendants Regional Transit Authority/TMSEL and Clarence W. Kelly (hereinafter collectively "RTA") appeal a trial court judgment in favor of plaintiffs Lillie Chapman and Alberta Chapman (hereinafter collectively "the Chapmans") for injuries sustained as a result of a 1993 collision which occurred when an RTA bus driven by Kelly rear-ended the automobile in which the Chapmans were riding. We affirm the trial court judgment.

I. Facts

The two parties to the action present two different versions of the facts. The Chapmans claim that the car in which they were riding was stopped at the intersection of General DeGaulle Avenue and Wall Boulevard on the west bank of the New Orleans metropolitan area when the RTA bus unexpectedly struck their car from the rear, causing serious injury to driver Lillie Chapman and passenger Alberta Chapman.[1] Thereafter, the Chapmans' car was struck by another vehicle, driven by Jon Binh Nguyen. The Chapmans claim that they were not injured by the second impact because it was relatively minor.
Although RTA admits that the bus rearended the car in which the Chapmans were riding at the intersection, it claims that the accident was unavoidable from the point of view of the RTA driver. RTA alleges that the bus was stopped at the intersection behind the Chapman vehicle, waiting to merge into traffic. The Chapman vehicle started to move into traffic, RTA claims, but stalled in the intersection. The bus driver, who was allegedly looking to see if he could merge into traffic, was not aware of the stalled vehicle until it was too late, RTA asserts.
Moreover, RTA claims that the Chapmans' injuriesespecially Lillie Chapman's injurieswere caused by the second impact rather than the first. Lillie Chapman was *1304 outside the car at the time of the second impact. When the second car hit the Chapman car, the Chapman car skidded, the RTA claims, hitting Lillie Chapman and knocking her to the ground. Lillie Chapman claims, however, that the car moved only slightly, and merely brushed her thigh, causing a bruise at the most.
The trial court accepted the Chapmans' versions of the facts, found the RTA liable, and made the following awards: to Lillie Chapman$375,000 for pain and suffering and permanent disability, $128,000 for past and future lost wages, and $24,062.29 in stipulated medical expenses; and to Alberta Chapman$95,000 plus 2,025.73 for medical expenses.
RTA appeals, assigning six assignments of error, which may be summarized as follows:
The trial court improperly refused to apply the sudden emergency doctrine to excuse RTA from liability.
2. The trial court improperly failed to assign any comparative fault to the driver of the second vehicle which struck the Chapman vehicle after accident with the RTA bus.
3. The trial court improperly excluded testimony from two RTA witnesses because of failure to supplement discovery requests.
4. The awards to Alberta Chapman and Lillie Chapman are excessive.

II. Sudden emergency doctrine

RTA claims that the trial court improperly refused to exonerate RTA from liability under the "sudden emergency doctrine," which excuses a following motorist from liability if he is "suddenly confronted with an unanticipated hazard created by a forward vehicle, which could not be reasonably avoided, unless the emergency is brought about by his own negligence." Ly v. State Through Dept. of Public Safety and Corrections-Louisiana State Police, 633 So.2d 197, 201 (La.App. 1st Cir.1993). It is significant, the RTA asserts, that the forward vehicle in Ly had stalled because RTA claims the Chapmans' vehicle had stalled in the instant case. RTA claims that under the facts of the instant case, the driver could not have avoided the accident.
However, RTA's arguments on this issue have merit only under the RTA's version of the facts. Under the Chapmans' version of the facts, the "sudden emergency doctrine" has no application. The trial court heard both versions of the facts and chose to accept the version offered by the Chapmans, finding in fact that the Chapman car was "violently" struck by an RTA bus from the rear. It is well-settled in Louisiana law that an appellate court must affirm a trial court decision based on credibility in the absence of manifest error. See Stobart v. State Through DOTD, 617 So.2d 880, 882-883 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989). Our review of the record reveals no manifest error on the part of the trial court; thus, the trial court judgment on this issue is affirmed.

III. Comparative fault

RTA also challenges the trial court's failure to assign any comparative fault to the driver of the second vehicle. As noted above, RTA claims that the second impact pushed the Chapman automobile against Lillie Chapman so violently that she was knocked to the ground, sustaining her injuries. Moreover, says RTA, Alberta Chapman's injuries could as easily have been caused by the second accident as the first because she was still in the car when the second impact occurred.
Lillie Chapman admits that the car brushed her thigh at the time of the second impact, but claims that it did not cause her injuries; that testimony is supported by the testimony of other plaintiff witnesses. Likewise, Alberta Chapman admitted that she was in the car at the time of the second impact, but says the impact was so minor that it could not have caused her injuries. Moreover, a reading of the record reveals that Mr. Kelly, the only RTA witness who testified at trial, did not see the second impact and therefore did not see what happened to the car or to Lillie Chapman. Mr. Kelly admitted that he did not notice any water or other evidence of a fall on Lillie Chapman when she came back to the bus to ask to use the phone to call an ambulance after the second impact.
*1305 Once again, the trial court's decision on this issue is based on a credibility call. Because that credibility call is supported by the record, we affirm the trial court judgment on this issue.

IV. Exclusion of testimony

RTA claims that the trial court improperly excluded the testimony of their claims adjustor Richard Jones and of Officer Racasner, who was assigned to investigate RTA accidents. This issue is actually related to the issues discussed above because, RTA claims, the testimony of both Jones and Racasner would have supported RTA's version of the story. The testimony of both Jones and Racasner was proffered; both stated that Lillie Chapman told them that her car had stalled, contrary to Lillie Chapman's testimony at trial.
The reason for the trial court's exclusion of the testimony of the two witnesses was RTA's failure to supplement its answers to the Chapmans' interrogatories concerning who RTA planned to call as witnesses at the trial. Specifically, in answering the Chapmans' interrogatories concerning the identity of witnesses, RTA said it had not yet determined its witnesses and reserved the right to supplement its response to the request. They never supplemented the response to the interrogatories.
RTA claims that the testimony of the witnesses should not have been excluded, because the identity of the two witnesses was easily discoverable by the Chapmans. Moreover, RTA argues that the Chapmans knew of the existence of the witnesses because of oral communications. Thus, the RTA asserts, the Chapmans were not caught by surprise. However, the Chapmans did not depose either witness prior to trial; they stress RTA's responsibility to supplement its responses.
La. C.C.P. art. 1428(1) imposes a continuing affirmative duty on a party to timely supplement discovery responses related to witnesses and experts. Concerning witnesses, the article imposes a duty to seasonably supplement their discovery responses concerning any questions directly addressed to the identity and location of persons having knowledge of discoverable matters. When a party discovers a new witness with knowledge of discoverable matters, he is required to make this information known to the adverse party. This rule is based on the fact that all parties to the litigation need to know both the identity of the witnesses and the extent of their knowledge.
Moreover, the failure to timely supplement discovery responses, when a duty to do so exists, may trigger sanctions. Courts have regularly exercised their inherent powers by imposing sanctions for failing to timely supplement discovery responses. A trial court generally has great discretion to determine whether to admit testimony after a party objects on the ground that his opponent failed to fulfill the statutory mandate of La. C.C.P. art. 1428 to supplement discovery requests. Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1151-52 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994). Thus, a trial court may refuse to allow testimony from a witness not properly disclosed to the adverse party. See Buxton v. Evans, 478 So.2d 736 (La.App. 3d Cir.), writ denied, 479 So.2d 921 (La.1985). The trial court's decision may not be reversed in the absence of an abuse of that discretion.
We find no abuse of the trial court's discretion disallowing the testimony of RTA's witnesses. RTA did not inform the Chapmans that it intended to call any witnesses at trial. The Chapmans obviously did not anticipate testimony from either Jones or Racasner because they did not depose either witness. Thus, we affirm the trial court judgment on this issue.

V. Quantum

Finally, RTA contests the general damage awards to both Lillie Chapman and Alberta Chapman, saying they are excessive.[2] Moreover, *1306 RTA claims that the lost wages award to Lillie Chapman is excessive.

A. General damage awards

When reviewing a general damages award to a plaintiff, this court is required first to consider the effect of the particular injuries suffered by the plaintiff under the particular circumstances of the particular injured person. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La. 1993). The trial court is vested with "vast" discretion in setting a general damages award, and may not be reversed in the absence of a clear abuse of that discretion. Id. at 1261.

1. Alberta Chapman

RTA's arguments concerning Alberta Chapman, who received $95,000 in general damages for shoulder and low back injuries, are based primarily on the facts that she was 61 at the time of the accident and that her doctor testified to some evidence of degenerative changes, which RTA claims cannot be attributed to the accident. Albert Chapman claims that she received real injuries and had real damages caused by the accident. Her treating physicians, Dr. Blamphin and Dr. Kucharchuk, testified that Alberta Chapman suffered a bulging or herniated disc, which was probably caused by the trauma of the accident. Because of her age, surgery was not recommended. Alberta Chapman testified to the detrimental effect her injuries have had on her ability to perform household activities and to work at her church.
Under the strict standard pronounced by the Louisiana Supreme Court in Youn, we cannot say that the trial court's general damage award to Alberta Chapman is so excessive as to constitute an abuse of the trial court's vast discretion. Accordingly, the general damage award to Alberta Chapman is affirmed.

2. Lillie Chapman

Lillie Chapman, who was 42 years old at the time of the accident, received $375,000 in general damages in the trial court judgment. Lillie Chapman suffered a back injury and underwent surgery for two herniated discs. She underwent a two-level discectomy and fusion, and her household activities have been affected by her injuries. Her injury was described by her doctor at trial as "a big league injury." Lillie Chapman's treating physician assigned a 20 to 25 percent permanent total body impairment, and placed strict restrictions on activities such as the pulling, lifting, or working with more than 35 pounds, as well as repetitive squatting and bending, making it impossible for Lillie Chapman to return to her previous employment as a nursing aide in a nursing home.
Given the vast discretion granted a trial court in setting general damages awards, we find no abuse of discretion in the award to Lillie Chapman; thus, the trial court judgment awarding Lillie Chapman $375,000 in general damages is affirmed.

B. Lost wages

The trial court also awarded Lillie Chapman $128,000 in past and future lost wages. RTA claims those damages are excessive under the circumstances.
A trial court is given broad discretion in awarding damages for impairment of earning capacity. Perez v. State DOTD, 578 So.2d 1199, 1206 (La.App. 4th Cir.), writ denied, 581 So.2d 706 (La.1991). Factors which may be considered by a court when establishing an award for lost wages include age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation. Lanclos v. Rockwell International Corp., 470 So.2d 924, 934 (La.App. 3d Cir.), writ denied, 477 So.2d 87 (La.1985).
Lillie Chapman was not working at the time of the accident, but, as noted above, had previously served as a nursing assistant in a nursing home. She had left her job because of drug and alcohol problems, which she claims were resolved prior to the accident. *1307 Lillie Chapman says that she was simply postponing her return to work until after her daughter gave birth, which was imminent at the time of the accident. However, the restrictions placed by her doctor make it impossible for her to return to her pre-accident job. RTA intimates that Lillie Chapman is not entitled to any lost wages because she was not working at the time of the accident.
Moreover, the past wage loss award to Lillie Chapman was based on her own testimony, not on any expert testimony, which RTA claims is not appropriate. However, under Louisiana jurisprudential law, wage losses may be established by any proof which reasonably establishes the claim, including the plaintiff's own reasonable testimony. Buras v. United Gas Pipeline Co., 598 So.2d 397, 402 (La.App. 4th Cir.1992).
Lillie Chapman's calculation of her future wage losses, which were accepted by the trial court, was based on a loss of the difference between her pre-accident wages (approximately $7 per hour), and minimum wage, the maximum amount she believes she can earn as a result of her injuries. She claims that she will lose approximately $3 per hour, or $6,000 per year because of her injuries. Her work life expectancy is approximately 24 years, making her losses $144,000 by her calculations. Lillie Chapman's testimony was the only evidence presented on the loss wages issue; RTA failed to present any kind of rebuttal evidence.
We find no abuse of the trial court's great discretion in setting Lillie Chapman's award for lost wages; thus, that award is affirmed.

VI. Conclusion

Accordingly, the trial court judgment is affirmed in all respects.
AFFIRMED.
NOTES
[1] Lillie Chapman's children, James, Shameka, and Jamol, were also passengers in the car at the time of the accident; however, the claims of the children were settled prior to trial.
[2] The Chapmans claim the quantum awards are too low, and request additional recovery. However, the record contains no answer to RTA's appeal; thus, the Chapmans are precluded from additional recovery.