509 So.2d 840 (1987)
Larry P. ESCHETE
v.
John MECOM, et al.
No. CA 86 0870.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*841 Danny Lirette, Houma, for plaintiff and appelleeLarry P. Eschete.
Wood Brown, III, New Orleans, for defendant and appellantsValhi, Inc., and Contran Holding Corp.
Before SAVOIE, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
This is an appeal from a judgment awarding damages to a boat operator for an injury that resulted from a collision with a well cribbing submerged under water of a private canal located on the defendant's property.
In May, 1983, Larry Eschete and his brother were fishing on a dead end canal that adjoins the intercoastal waterway near Houma, Louisiana. As they were leaving the canal the boat struck the cribbing boards of an abandoned well that was located in the canal. The boards were submerged at the time of the accident and there were no warning signs or buoys. The private canal was dredged by the two oil companies that drilled for minerals in two wells present in the canal. The well cribbing was placed on the property by the oil companies and became the property of the defendants when the mineral leases expired. Upon striking the cribbings, the plaintiff and his brother were thrown from the boat. The plaintiff suffered a back injury which subsequently required corrective surgery. After a bench trial, the defendant was held liable for the damages resulting from the injury.
The trial judge held that La.R.S. 9:2791 and 2795 did not apply to provide immunity from liability for the defendants. In determining the applicability of 9:2791 and 2795, the trial court used the two step analysis as set out by the Louisiana Supreme Court in Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). The trial judge further found that the canal in question was a navigable waterway and that general maritime law applied, additionally precluding the application of La.R.S. 9:2791 and 2795.
Two issues have been raised on appeal:
1) Should general maritime law apply in a dead end canal that is connected at one end to the intercoastal waterway?
2) If not, do La.R.S. 9:2791 and 2795 apply to the present case and provide the landowner immunity from liability under Louisiana law?
*842 The only real issue is the applicability of La.R.S. 9:2791 and 2795. Should these statutes not apply, the defendant would be liable regardless of whether state law or maritime law governs.

APPLICABILITY OF LA.R.S. 9:2791 and 2795[1]
The Louisiana Supreme Court has limited the application of La.R.S. 9:2791 and 2795 to undeveloped, non-residential or semi-rural areas, when the injury causing condition or instrumentality is of the type normally encountered in the true outdoors. Keelen, 463 So.2d at 1291.
The trial judge correctly found that the canal in question is the type of property that would fall under the statute. The canal is rural, undeveloped and remote. He refused the application of the immunity *843 provisions of the statutes because he felt that an abandoned well cribbing is not the type of "condition or instrumentality normally encountered in the true outdoors."
Appellants refer to language in Keelan to support their contention that the instrumentality causing the injury is encompassed by the statute thus providing defendants' immunity. In Keelan it was stated that:
Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury-causing condition or instrumentality must also be scrutinized.... When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection. (emphasis added)
Keelan, 463 So.2d at 1290.
Appellants argue that in south Louisiana oil well cribbings are normally encountered in the true outdoors. They further argue that oil well cribbings are not normally found in someone's backyard and consequently must be covered by the statute. This argument isolates the language of Keelan without reference to its context. Because an instrumentality is not normally found in someone's backyard does not mean that it automatically is something that is normally encountered in the true outdoors. In Keelan the court was dealing with a swimming pool, an instrumentality which would not normally be found on the type of property covered by the statute (undeveloped, nonresidential or semi rural). It would normally be found in someone's backyard, a type of property not covered by the statutes. Apparently, without attempting to specify every conceivable type of instrumentality, the supreme court extended the immunity provided by the statutes only to instrumentalities that naturally occur on the types of property covered by the statute. This might include trees, ponds (as opposed to swimming pools) or similar type instrumentalities. Those instrumentalities that result from a commercial enterprise on lands covered by the statute, among others, are not instrumentalities that one would normally encounter in the true outdoors. An oil well cribbing is such an instrumentality.
Additionally, even if it could be concluded that oil well cribbings are instrumentalities normally encountered in the true outdoors in south Louisiana, this particular submerged oil well cribbing is not such an instrumentality. Here it was not possible for the plaintiffs to discover the presence of the cribbing. The trial court found that the water level in the canal fluctuated both with the tide and season, and at certain times of the day and season, the well cribbings were submerged. The trial court further found that the cribbings were submerged a few inches at the time of the accident. Application of the statutes in this case would allow the landowner to maintain a man-made trap on property used extensively by the public for recreational purposes, that could not be observed or avoided, and receive statutory immunity from liability. We do not believe that La. R.S. 9:2791 and 2795 were intended to serve such a purpose.
Finding the immunity provisions inapplicable, defendant is liable for the damages to the plaintiff regardless of whether state law or maritime law is applied. Consequently, we affirm the judgment. In all other respects, we find the judgment of the trial court correct. Costs of this appeal are to be assessed against the appellants.
AFFIRMED.
NOTES
[1] La.R.S. 9:2791

Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
La.R.S. 9:2795
Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.