693 So.2d 162 (1997)
Mandy VERDIN, Wife of/and Sidney Verdin
v.
The LOUISIANA LAND AND EXPLORATION COMPANY.
No. 96-CA-1815.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1997.
Rehearing Denied May 15, 1997.
*164 Joel Waltzer, Bruce C. Waltzer, Waltzer & Associates, New Orleans and Joseph L. Waitz, Mary Riviere, Waitz & Downer, Houma, for Plaintiffs/Appellants.
Bruce R. Hoefer, Jr., Robert T. Lorio, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Defendant/Appellee.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs Mandy and Sidney Verdin (hereinafter "the Verdins") appeal a trial court judgment following a jury trial, which dismissed their suit against defendant Louisiana Land & Exploration Co. (hereinafter "LL & E") on a finding that LL & E is immune from liability under the Louisiana recreational use immunity statutes, LSA-R.S. 9:2791 and 9:2795. We affirm.

FACTS AND PROCEDURAL HISTORY
The Verdins claim that they suffered serious injuries on December 8, 1991, when the sixteen-foot flatbottom skiff in which they were riding hit a concrete survey marker placed by LL & E at the corner of its property in a marshy area near the Verdins' home at Point Au Chien, Louisiana. The purpose of the concrete survey marker was to identify the boundaries of the property owned by LL & E. The edges of the LL & E property in the area were marked with signs which read as follows:

POSTED

THE LA. LAND AND EXPLORATION CO.

HOUMA, LA.
The evidence presented at trial indicates that the signs were placed at approximate 500feet intervals. Moreover, LL & E claims that the marker which the Verdins allegedly struck was marked with a sign on either side. Both of the Verdins denied seeing any signs at the site of the marker on the day of the accident. They were on their way home from an afternoon fishing expedition when the accident occurred.
The Verdins filed suit against LL & E claiming negligence in the maintenance of the corner marker in an open bay without any warning signs. LL & E answered, claiming, inter alia, that, as the owner of property used for recreational purposes, it is immune from liability under Louisiana's recreational use statutes. Following a weeklong jury trial, the jury found that LL & E was 100 percent at fault in causing the accident. However, the jury also answered "YES" to the following interrogatory: "Do you find that the plaintiffs Mandy Verdin and Sidney Verdin were fishing for recreational purposes at the time of their accident?" On the basis of that factual finding, the trial court entered judgment in favor of LL & E, dismissing the Verdins' case. In his reasons for judgment, the trial judge stated as follows:
The jury found that the plaintiffs, Mandy Verdin and Sidney Verdin, were fishing for recreational purposes at the time of their accident.
Under R.S. 9:2791 the defendant is entitled to immunity under the facts existing.
The Verdins appeal, claiming that the trial court erred in applying the recreational use immunity for the following reasons: (1) the record contained no evidence that LL & E had dedicated the bay in question for recreational purposes; (2) the Verdins were not given permission to engage in any recreational use of the bay; and (3) the hazard was a man-made concrete marker placed in the open bay by LL & E. The Verdins also claim *165 that the trial court's application of the recreational use immunity statutes renders the statutes unconstitutional, and that the state recreational use immunity cannot abolish LL & E's liability under federal law prohibiting the obstruction of navigable waters. Finally, the Verdins claim that the jury erred in finding that they were engaged in recreational activity at the time of the accident.[1] LL & E answered the Verdins appeal, claiming that the jury erred in making the following factual findings in favor of the Verdins: (1) that the Verdins' skiff struck the LL & E corner marker; (2) that LL & E was solely at fault; (3) that the Verdins proved the required causal relationship between the alleged accident and their alleged injuries; and (4) that Mandy Verdin was entitled to $100,000 in general damages. The parties had stipulated the amount of special damages, and LL & E claims also that the jury should not have disregarded the stipulated amounts and made other special damage awards.

STANDARD OF REVIEW
In the instant case, the judge entered judgment in favor of the defendants on the basis of the fact that the jury found that the Verdins were engaged in recreational activity at the time of the accident. Because of the jury's finding that the Verdins were engaged in recreational activity, the trial judge held that LL & E was immune from liability under Louisiana's recreational use immunity statutes. Thus, the trial court judgment was based wholly on the jury's findings of facts. The standard of review for this judgment is therefore the "manifest error" standard of review which applies to judgments based on factual findings. See Stobart v. State, 617 So.2d 880 (La.1993). Accordingly, this court's task is to determine whether the jury's findings "are reasonable in light of the record reviewed in its entirety." Housley v. Cerise, 579 So.2d 973, 976 (La.1991).

APPLICATION OF RECREATIONAL USE IMMUNITY STATUTES
Louisiana's recreational use immunity is created by LSA-R.S. 9:2791, relative to land not used primarily for commercial recreational purposes, and LSAR.S. 9:2795, relative to land used for recreational purposes. The purpose for which the recreational use immunity statutes were adopted was "to induce private owners of large acreages to open expanses of undeveloped lands for public outdoor, open land recreational purposes." Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1098 (La.1990). Because the two statutes deal with the same subject matter, they must be read in pari materia. Id. at 1100. In fact, the jurisprudence generally does not distinguish between the two statutes. Because the record in the instant case indicates that the property in question was not used primarily for commercial recreational purposes, we quote LSA-R.S. 9:2791:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises *166 are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.

A. Factors for determining application of the statutes

Most of the cases interpreting the recreational use immunity statutes impose either two or three conditions on the application of the immunity. For example, the Louisiana Supreme Court, in Ratcliff v. Town of Mandeville, 502 So.2d 566 (La.1987), stated as follows:
This court has described two factors to consider when determining whether the immunity provided by R.S. 9:2791 and 9:2795 is applicable to a given set of facts. First, the property where the injury occurred must be an undeveloped, nonresidential rural or semi-rural land area. Second, the injury itself must be the result of recreation that can be pursued in the "true outdoors."
Id. at 567, citing Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La.1985). This test has also been applied by this court in Lewis v. State Farm Fire & Casualty Co., 94-2639 (La.App. 4th Cir. 4/26/95), 654 So.2d 883. The first part of the test addresses itself to the locality of the accident, while the second part addresses itself to the activity. Broussard v. Department of Transportation & Development, 539 So.2d 824 (La.App. 3d Cir.1989).

1. Locality of the accident

Unquestionably, the area where the injury occurred in the instant case is "an undeveloped, nonresidential rural or semirural land area." The record evidence indicates that the accident occurred in a "bay" or marshy area. Other than the concrete marker and the posts with the POSTED signs, the area was apparently in a completely natural state. Thus, we find that the first factor for application of the recreational use immunity is satisfied.

2. Activity of the victim

Concerning the second factor, the jury found that the Verdins were engaged in a recreational activity at the time of the accident. Although the Verdins contest that conclusion, the record evidence is sufficient to support the jury's finding. Although both of the Verdins held valid commercial fishing licenses on the date of the accident, they stated that they were fishing with poles. Ms. Verdin said that they had not caught any fish that day. Both of the Verdins said that if they had caught some fish, they would have eaten some, then sold any that were left over. Ms. Verdin admitted that they had made only a little money fishing with poles and that most of their commercial fishing was for shrimp and crab. In the light of that evidence, the jury was not manifestly erroneous in determining that the Verdins were engaged in recreational fishing on the day of the accident. Accordingly, the Verdins' injuries were the result of an recreational activity which can be pursued in the "true outdoors." The second factor of the test recited by the Louisiana Supreme Court in Ratcliff and Keelen, and adopted by this court in Lewis, is therefore satisfied.

3. Character of injury-causing instrumentality

In addition to the above two factors which are used consistently by courts for determining whether the recreational use immunity statutes should apply to a given situation, many of the more recent cases applying those statutes cite a third factor to be considered in determining whether the recreational immunity statutes should applyi.e., "the jury-causing *167 instrumentality must be of the type normally encountered in the "true outdoors" and not of the type usually found in someone's backyard."[2]Ward v. Hermitage Insurance Co., 28,236 (La.App.2d Cir. 4/3/96) 671 So.2d 1229, 1232-33, writ denied, 96-1141 (La.9/3/96), 678 So.2d 554. Because this factor is considered in many of the cases interpreting the Louisiana recreational use immunity statutes, we will consider this third factor.
The caselaw interpreting the recreational use immunity statutes is clear that the fact that the injury-causing instrumentality is man-made does not in and of itself defeat the immunity. See Singletary v. Crown Zellerbach, 554 So.2d 846 (La.App. 1st Cir.1989)(injury occurred when three-wheeler struck gate on property); Lewis, 654 So.2d 883 (injury occurred on a fishing pier); Broussard, 539 So.2d 824 (injury occurred on concrete boat launch ramp adjacent to canal); Adams v. State, 525 So.2d 55 (La.App. 3d Cir.1988) (injury occurred in dive from homemade diving platform attached to tree); Ratcliff, 502 So.2d 566 (injury occurred on boat dock); LaCroix v. State, 477 So.2d 1246 (La. App. 3d Cir.), writ denied, 478 So.2d 1237 (La.1985) (injury occurred in dive from concrete culvert into creek).
In the instant case, the Verdins claim that their boat hit a concrete survey boundary marker, which they characterize as "a manmade concrete marker placed in the open bay by the defendant." The record in the instant case reveals that such concrete markers are required by Louisiana administrative law for property surveys. See 46 La. Admin. Code § 2507, which requires the establishment of monumented corners on surveyed property. Land surveyor Charles Camp testified at trial that Louisiana State law requires all landowners to mark the boundaries of their land with concrete markers. Many landowners other than LL & E mark their boundaries in the area in question with concrete markers, he said. In fact, according to Mr. Camp, the "whole area is marked with concrete markers." LL & E manager Gerald Voisin estimated that some eight to 15 thousand concrete markers are located in the area.
The Verdins claim, however, that the corner marker does not meet the third criterion for application of the recreational use immunity statutes because it is "not incidental to the recreational use of the property." However, the cases interpreting the recreational use immunity statutes do not require that the injury-causing instrumentality be incidental to the recreational use of the property. The Verdins also state that "while the marker may be found even in undeveloped land, the marker ... is in fact found in developed tracts of land." The fact that the marker may be found both in undeveloped and developed tracts of land begs the question. The cases require only that the injurycausing instrumentality be of the type more likely to be found in the "true outdoors" than in someone's backyard. Certainly, property owners do not typically mark the boundaries of their residential property with concrete corner markers. Commonly, the boundaries of someone's backyard are marked with a fence or perhaps by the fact that the property owner maintains the property only to a certain point. While the record contains evidence that concrete boundary markers are commonly found in the "true outdoors" and that they are found extensively in the area where the Verdins' alleged accident occurred, it contains no evidence indicating that the same type of markers are ever found in someone's backyard. Thus, we find the third factor for application of the recreational use immunity statutes is satisfied.
The facts of the instant case are distinguishable from the facts in Eschete v. Mecom, 509 So.2d 840 (La.App. 1st Cir.), writ denied, 513 So.2d 821 (La.1987), in which a boater was injured when his boat collided with well cribbings submerged underwater in a dead-end canal connected at one end of the intercoastal waterway. The court found in Eschete that well cribbings were not instrumentalities normally encountered in the true outdoors. However, that conclusion was *168 based in part on the fact that the injurycausing instrumentality resulted from a commercial enterprise, and the fact that the oilwell cribbings were not instrumentalities that one would normally encounter in the true outdoors. The concrete marker in the instant case did not result from a commercial enterprise, but from compliance with Louisiana state law. Moreover, on the basis of the record evidence, we find that concrete survey markers do qualify as instrumentalities that one would normally encounter in the "true outdoors."

4. Other factors

Despite the fact that the cases generally consider only the two or three factors enumerated above for determining the application of the recreational use immunity statutes, the Verdins argue strenuously that the immunity should not apply in the instant case, despite the presence of the factors normally considered, because of the absence of two other factors: (1) dedication of the property for recreational use and (2) permission from the owner to the victim to use the property. Thus, the Verdins would have this court impose two additional factors on the application of the statutes which have never been cited as determinative by any Louisiana court. Moreover, application of those requirements as urged by the Verdins has been rejected by other Louisiana courts, either implicitly or explicitly, as discussed below.

B. Dedication requirement

Concerning the dedication requirement, several of the cases refer in dicta to application of the recreational use immunity doctrine to land "properly dedicated to one or more of the specified recreational purposes." Monteville, 567 So.2d at 1101; Dear v. Crosby Chemicals, 95-1309 (La.App. 3d Cir. 3/6/96), 670 So.2d 775, 776, writ denied, 96-1267 (La.6/21/96), 675 So.2d 1091; Ward, 671 So.2d at 1232. However, in Dear the court found specifically that the land in question met the requirements for applicability of the statutes, including the requirement that it be "dedicated to one of the recreational purposes specified by the Recreational Use Statutes" because it was dedicated to "hunting and fishing." The opinion does not explain how the property was so dedicated. However, a reading of the case reveals that the plaintiff's injuries were sustained in a hunting accident which occurred at a private hunting club not open to the public. The only evidence of "dedication" was the fact that the property was subject to a hunting lease.
In the instant case, the parties stipulated that "from the 1970's to the 1990's, LL & E had leases on its marshlands in portions of Section 21 for recreational waterfowl, hunting and trapping." Louisiana is widely considered a sportsman's state, containing numerous areas for hunting, fishing, trapping, and other activities. The area in question is exactly the type of area used by the public for trapping and fishing. Although a specific trapping lease was granted for the exact area where the accident in question took place,[3] the record indicates that the local residents enjoyed all types of recreational activities on LL & E's property. The record evidence is overwhelming that the LL & E property was a popular area for recreational purposes; the Verdins cannot dispute this reality. Even assuming that dedication of property is required in order to make the recreational use immunity statutes applicable, we find that the property in question in the instant case was properly dedicated both because it was subject to recreational leases and because it *169 was widely enjoyed by area residents for recreational purposes.[4]

C. Permission requirement

Concerning the permission requirement, the Verdins would have this court hold that a landowner has a greater duty to a party who goes onto his land for recreational purposes without his permission than to a person who goes onto his land for recreational purposes with his permission. The Verdins claim that since the purpose of the statutes was originally to encourage landowners to open their property for recreational purposes, the landowner then "chooses his own level of immunity" depending on the number of people he gives permission to use the property. Once again, this premise is defeated by the relevant caselaw.
First, the language of the statute itself defeats the Verdins' arguments on this issue. After stating specifically that a landowner "owes no duty of care to keep such premises safe for entry or use by others" for any of the enumerated recreational purposes, LSA-R.S. 9:2791(A) specifically addresses the fact that the immunity applies even if the owner gives the injured party permission to use the property.[5] That fact alone indicates that the immunity is intended to apply even when the injured party was using the property without the owner's permission.
Moreover, the language of LSA-R.S. 9:2791(C) supports the conclusion that the immunity applies even if the injured party did not have the owner's permission to use the property, as it provides as follows:
The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises so as to limit the use of the premises to persons other than the entire public or by the posting the premises so as to limit the use of the premises to persons other than the entire public.
Thus, a landowner is immune from liability to persons using his property for recreational purposes even if the use of the property is limited to persons other than the entire public by way of a lease, a right of use, or a right of occupancy, or by the posting of the property. In the instant case, the property was subject to a recreational trapping lease and it was posted. However, those facts do not defeat application of the recreational use immunity statutes because of the express language of LSA-R.S. 9:1751(C), as quoted above.
A close study of the caselaw interpreting the recreational use statutes also reveals the flaw in the Verdins' argument on this issue. For example, in Holder v. Louisiana *170 Parks Service, 552 So.2d 20 (La.App. 3d Cir.1989), writ denied, 556 So.2d 59 (La. 1990), the court stated as follows:
A plain reading of La. R.S. 9:2791, coupled with the fact that the legislature enacted with La. R.S. 9:2795 a second more expansive immunity statute, can only evidence an intent on the part of the legislature that these statutes are to grant a broad immunity from liability.[6] Additionally, the legislative history of these statutes dictates that they should be applied to confer immunity upon owners of all property used for recreational purposes from those who are injured while using such property.
Id. at 26 (emphasis added).
Moreover, at least two cases applying the recreational use immunity statutes involved injured parties who did not have permission to enter the premises. In LaCroix, 477 So.2d 1246, the injured party was a 14-yearold who was injured when she dove into a creek from a tunnel bridge constructed by the defendant. In finding that the recreational use immunity statutes applied to relieve the defendant from liability, the court stated as follows:
The rationale employed by our Supreme Court in Keelen, supra, leads us to conclude that the injury in question took place at a location which is covered by the immunity statutes. Clearly, this accident took place in a rural setting. Because of this site's popularity, we believe it warrants being termed a recreational area. Members of the general public swam in this creek without charge. Admittedly, the State did not invite individuals to swim at this site and considered individuals who did as trespassers. However, in our view, this fact does not preclude the State from enjoying the benefit of the immunity provided by La. R.S. 9:2791 and 2795. Irrespective of whether or not the general public was invited to swim at this location, the fact remains that they were able to enjoy the use of this property as a recreational area.
Id. at 1250 (emphasis added).
In the instant case, the record is replete with evidence that the area where the accident occurred in the instant case was widely used by the general public for recreational purposes, despite the fact that LL & E posted the area and considered the persons using the property as trespassers. Although LL & E did not invite the public to use the property for recreational fishing purposes, even the witnesses testifying on behalf of the Verdins at trial admitted that they frequently use the area. One witness had used the area the very day he testified. Thus, we find that the general public was able to use this land for recreational purposes and that LL & E is therefore entitled to the benefits of the recreational use immunity statutes.
Another case involving application of the recreational use immunity statutes to an injury party who was present on the defendant's property without permission is Lewis, 654 So.2d 883. In that case, this court found the immunity applicable to protect a property owner from liability for injuries suffered when the plaintiff fell through a fishing pier at a fishing camp while looking for something to help him repair his boat. Although the case does not discuss the issue, the boater obviously did not have permission to enter the fishing camp. Thus, the Verdins' argument that the recreational use immunity statutes should not apply because they had no permission to use the land is meritless.
Accordingly, we find that all the necessary requirements for application of the recreational *171 use immunity statutes are present in the instant case. LL & E is entitled to the benefits of the recreational use immunity statutes under the facts of this case. The trial court properly dismissed the Verdins' case against LL & E.

CONSTITUTIONALITY
The Verdins also claim that the trial court's application of the recreational use immunity statutes is unconstitutional. However, the Verdins failed to raise this issue in the trial court as required by the relevant jurisprudence. See Bellard v. Louisiana Correctional & Industrial School, 95-0157 (La. 10/16/95), 661 So.2d 430, 432; Marler v. Petty, 94-1851 (La.4/10/95), 653 So.2d 1167. The Verdins seek to avoid the requirement that their constitutionality argument be raised in the trial court by claiming that they are not challenging the constitutionality of the statute itself, but the constitutionality of the trial court's application of the statute. They claim that they would have raised the constitutionality issue if they had known that the trial judge would apply the statute without requiring evidence of dedication and permission. However, LL & E raised the recreation use immunity issue in its first supplemental answer to the Verdins' petition. Since very early in the case, the recreational use immunity has been an issue in the case. As demonstrated by the above discussion of the issues, the trial court's application of the statute does not represent a great departure from previous applications of the statute. Moreover, the constitutionality of the recreational use immunity statutes has been upheld in the face of arguments similar to those urged by the Verdins in the instant case. See Stuart v. City of Morgan City, 504 So.2d 934 (La.App. 1st Cir.1987).
Additionally, the Verdins' arguments that they did not receive any quid pro quo in exchange for the loss of their right to sue for damages incurred on the property because the land was not "dedicated" to recreational purposes and because they were not given permission to enter the land is contradicted by the evidence adduced in the trial of this matter. The fact is that the Verdins, many of their friends and neighbors, as well as many other people in the area, have benefitted from the use of the undeveloped property owned by LL & E in southern Louisiana. Thus, the statutes were adopted in the interest of the community as a whole. The recreational use immunity statutes are not unconstitutional, even as they were applied by the trial court in the instant case, especially since that application is entirely consistent with previous applications of the statutes.

OBSTRUCTION OF NAVIGABLE WATERWAYS
Finally, the Verdins cite 33 U.S.C. § 403 as a basis for LL & E's alleged liability for their alleged injuries received in the accident on LL & E's property. 33 U.S.C. § 403 prohibits the unauthorized obstruction of navigable waterways. The Verdins claim that concrete marker in the instant case qualifies as an "obstruction" under the federal provision. Louisiana's recreational use immunity statutes cannot affect the applicability of the federal prohibition, the Verdins say.
We find several problems with this argument. First, the Verdins did not raise this argument in the trial court. Second, even assuming that LL & E violated the federal prohibition, the record contains no evidence concerning the penalty imposed for such a violation. Third, and most importantly, the record evidence indicates that the "bay" or marshland involved in this case is not navigable under the federal law.
At trial, LL & E presented the testimony of Mr. Voisin, who stated specifically that the area where the alleged accident occurred is non-navigable. The evidence indicates that the depth of the marsh area ranges from six to 24 inches depending on the time of the year and other factors. Moreover, the marsh area ends in a dead-end and is not part of an avenue of commerce. For purposes of the federal statutes, Mr. Voisin indicated, the term "navigable waterway" is a term of art which is not met by the characteristics of the area where the accident occurred. Thus, we find no merit in the Verdins' arguments on this issue.

*172 LL & E'S ANSWER TO APPEAL

Because we have determined that the trial court properly dismissed the Verdins suit against LL & E on the basis of Louisiana's recreational use immunity statutes, we pretermit any discussion of the issues raised by LL & E in its answer to the Verdins' appeal.

CONCLUSION
Accordingly, the trial court judgment in favor of defendant LL & E, dismissing the Verdins' suit, is affirmed in all respects. LL & E is immune from liability for the Verdins' injuries sustained while they were pursuing a recreational fishing activity under Louisiana's recreational use immunity statutes.
AFFIRMED.
PLOTKIN, Judge, denies rehearing with reasons:
I would deny rehearing in this case,[1] and write only to answer Judge Byrnes' allegations in his reasons to grant rehearing that the original opinion in this case improperly relies on LaCroix v. State, DOT, 477 So.2d 1246 (La.App. 3d Cir.), writ denied, 478 So.2d 1237 (La.1985) to support our holding that a landowner is entitled to the immunity benefits of the Louisiana Recreational Use Statutes, even if the injured party did not have permission to use the property. Judge Byrnes incorrectly implies that we relied on LaCroix for the proposition that the recreational use statutes apply "even where the landowner posted the property and intended to keep the public out." In actuality, we cited LaCroix, along with several other cases, including Holder v. Louisiana Parks Service, 552 So.2d 20 (La.App. 3d Cir.1989), writ denied, 556 So.2d 59 (La.1990) and Lewis v. State Farm Fire & Casualty Co., 94-2639 (La.App. 4th Cir. 4/26/95), 654 So.2d 883, to establish that no requirement that the party injured on the property have permission to use the property for recreational purposes has been imposed on application of the recreational use immunity statutes by the relevant jurisprudence. Moreover, posting of the property is not an issue in LaCroix; the primary similarities between LaCroix and the instant case is that the property owner in LaCroix considered individuals using the site as trespassers.
Moreover, I take issue with Judge Byrnes' statement that the LaCroix case is inconsistent with the Louisiana Supreme Court's decision in Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990). The Monteville case is actually of very little precedential value in deciding the instant case. The primary holding of Monteville is that the State is not entitled to the immunity established by the recreational use immunity statutes, because "the legislature intended to confer immunity only on owners of private lands." 567 So.2d at 1102. That decision was sufficient to determine the rights of the parties to the Monteville case; accordingly, the remainder of the opinion is technically dicta.
The second portion of the Monteville opinion simply discusses the two factors we set out in our original opinion for determining whether the recreational use immunity statutes apply: (1) locality of the accident, and (2) activity of the victim. As part of the discussion on the first of those issues, the Louisiana Supreme Court held that the immunity applies only to injuries resulting from accidents occurring on "large tracts or areas of natural and undeveloped lands located in thinly-populated or semi-rural areas." Id. at 1105. No requirement that the injured party have permission to enter the land is imposed by Monteville; certainly LaCroix is not explicitly overruled. Moreover, no one argues that the property where the accident occurred in the instant case does not fit the description established by the Supreme Court.
As Judge Byrnes points out, as part of the discussion of the "locality of the accident," the Supreme Court stated that the purpose of the recreational use immunity statutes is "to induce private owners of large acreage to open expanses of undeveloped lands for public *173 outdoor, open land recreational purposes." Id. at 1104. However, that statement does not preclude a finding that the immunity provided by the statutes is available even to landowners who have posted their property. The only relevance of the fact that LL & E had posted the property was to show that the plaintiffs never had permission to enter the property for recreational purposes. However, as pointed out in our original opinion, permission has never been a requirement for application of the recreational use immunity statutes. That fact is evident in a number of cases, including this court's opinion in Lewis, which was decided after the Supreme Court's decision in Monteville. Judge Byrnes conveniently ignores the obvious implications of that decision, which is binding precedent for this court.
Only one statement in Monteville could possibility be construed to deny immunity to the defendant in this case. Toward the end of the opinion, the court stated as follows: "[A]n owner who does not evidence an intent to permit the public to enter without charge for recreational use may not invoke the recreational use statute's protective benefits against liability." Id. at 1105. However, that statement is a part of the dicta and is based on a Delaware case which has no precedential value to this court. Moreover, that statement is later qualified as follows: "The Delaware Supreme Court held that the recreational use statute may only be invoked to limit the liability of real property owners who directly or indirectly invite or permit without charge the public at large to use their property for recreational purposes." Id. (Emphasis added.) That statement makes the rule stated above somewhat equivocal. In the light of this court's opinion in Lewis, as well as numerous other cases cited in our original opinion, it is clear that the requirement that the public be invited onto the property has not been strictly construed in Louisiana. The fact that the public is using the property has always been sufficient.
I would also note the fallacy in Judge Byrnes' factual conclusion that LL & E failed to prove that its property was subject to a recreational lease, despite the fact the parties stipulated that the property is subject to "recreational waterfowl, hunting and trapping" leases. Judge Byrnes cites Mr. Voisin's testimony that he knows the property was subject to a trapping lease, then makes a huge leap of logic, stating that "[i]mplicit in [Mr. Voisin's] statement is the inescapable conclusion that the trapping lease is a nonrecreational commercial lease." (Emphasis in original.) How is that conclusion implied? Why is it inescapable? Judge Byrnes does not explain. Certainly nothing in the record supports that conclusion; in fact the valid stipulation of the parties indicates otherwise. Nevertheless, Judge Byrnes uses this "implication" as the basis for proving a conclusion that was never questioned in the original opinionthat the property must be used for recreational purposes in order for the immunity statutes to apply. I have no quarrel with that conclusion. However, the cases do not require proof that the use of the property be subject to a lease. The record in this case is replete with evidence that the property in question was regularly used for recreational purposes, both by the plaintiffs and by other persons living in the area, in addition to those using the property pursuant to the "recreational waterfowl, hunting and trapping" leases admitted by the plaintiffs in the stipulation.
BYRNES, Judge, would grant rehearing.
After reviewing the original opinion of this court in this matter in response to plaintiffs' application for rehearing, I now realize that the logical consequence of that opinion will be the frustration of the intent of the legislature when it enacted the recreational use statutes of encouraging landowners to permit the recreational use of their property. Therefore, I would grant rehearing, reverse the judgment of the trial court and reinstate the verdict of the jury.
The original opinion of this Court states that the plaintiffs stipulated that the property is subject to "recreational waterfowl, hunting and trapping" leases, which stipulation relieved plaintiffs of the burden of proving that the property was subject to recreational leases. After rereading the stipulation carefully, I find that the plaintiffs are correct *174 when they argue that the stipulation does not specify what portions of Section 21 are subject to such leases. The burden is on the defendant to prove its affirmative defense of recreational use. LSA-C.C.P. art. 1005. (Actually, as I will demonstrate later this stipulation is irrelevant, as recreational use permitted to others has no bearing on the Verdins' claim.)
Mr. Voisin, upon whose testimony LL & E and the original opinion rely, testified that:
I don't think there was a recreational lease on it at that time which is a waterfowl duck lease, but I definitely know there was a trapping lease on it ... to Collins and Galliano.
Implicit in this statement is the inescapable conclusion that the trapping lease is a non-recreational commercial lease.
LSA-R.S.9:2795 includes "trapping" in its list of recreational activities. But that does not mean that all trapping is recreational in nature. The legislature did not intend to redefine "recreational" in a manner inconsistent with its normally understood meaning. "Recreation" is defined in the Second College Edition of The American Heritage Dictionary as:
Refreshment of one's mind or body after work through some activity that amuses or stimulates; play.
[Emphasis added.]
"Recreational" is the adjectival form of recreation. Implicit in the term are such concepts as "sport", "relaxation", and "diversion." Implicitly excluded from the term are such concepts as "gainful employment" and "enterprise pursued for profit."
"Recreational purpose" under LSA-R.S. 9:2795A(3) refers to any of the listed activities (hunting, fishing, trapping, etc.) when pursued as a recreational activity, i.e., when pursued for sport, play, relaxation, diversion, etc., but not for profit or as a form of gainful employment.
"Commercial recreational" refers to the business or for profit undertaking of providing recreational activities or opportunities for others.
But where the activity is engaged in for profit or as a form of gainful employment and without the intent of providing recreational activities or opportunities for others, then the activity is a commercial, non-recreational activity, in spite of the fact that it is among those activities listed in LSA-R.S. 9:2795A(3). To put it another way, in order to find that an activity is "recreational" it must both be included explicitly or implicitly in the LSA-R.S. 9:2795A(3) list, and the activity must be pursued as a form of recreation and not for profit or as a form of full or part-time employment. In other words, the fact that the activity may be found among the activities listed as "recreational" in LSAR.S. 9:2795A(3) does not make the activity recreational when it is not pursued as a form of recreation.
The only reasonable conclusion to be drawn from the record in this case, especially in view of defendant's burden of proof, is that the property where plaintiff was injured is subject to a purely commercial, non-recreational trapping lease. This is consistent with the undisputed posting of the property against trespassers and inconsistent with the finding in the original opinion that the property was open to the public or some designated segment thereof for recreational purposes.
The use of the land for recreational purposes contrary to the intention of the landowner to permit such use is not sufficient to qualify the property as recreational use property. It was error for this Court in its original opinion to rely on LaCroix v. State, Through Dept. of Transp., 477 So.2d 1246 (La.App. 3 Cir.), writ denied, 478 So.2d 1237 (La.1985), which would apply the recreational use statute even where the landowner posted the property and intended to keep out the public. LaCroix was decided several years before the Supreme Court decision in Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1101 (La.1990), and is inconsistent with Monteville. In Monteville, as noted in the original opinion the Supreme Court explained that the purpose of the recreational use statute was "to induce private owners of large acreage to open expanses of undeveloped lands for public outdoor, open land recreational purposes." To *175 extend the recreational use immunity to parties such as LL & E and the defendant in LaCroix who have posted their property to keep out the public would defeat the purpose of the statutes as it deprives the owners of any incentive to open up their lands. See also the following, all decided after LaCroix: Stuart v. City of Morgan City, 504 So.2d 934 (La.App. 1 Cir.1987); Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La.1985); Landry v. Board of Levee Commissioners of Orleans Levee District, 477 So.2d 672, 673 (La.1985).
When the only activities permitted by the landowners are non-recreational, the land cannot be characterized as recreational or even commercial recreational land. Therefore, the issue is not whether the Verdins' were on the LL & E property for recreational purposes. The issue is whether LL & E intended to allow the Verdins, the public, or at least some members of the public to use the property for recreational purposes. There is no question that the Verdins did not have permission to engage in recreational activities on the property. The record will not support a finding that LL & E intended to permit the recreational use of the property by anyone else, either. This conclusion is not changed by evidence of occasional recreational use by trespassers contrary to the intentions of LL & E. To permit LL & E to receive the benefits of the recreational use immunity without any intention of permitting the recreational use of its property would mean that the legislature struck a very poor bargain indeed when it enacted the recreational use statutes. To hold as we did in our original opinion and as the trial court did is clearly contrary to the intention of the legislature and the line of cases culminating in Monteville. Thus the finding by the jury that the Verdins were engaged in recreation at the time of the injury does not preclude recovery by the Verdins where LL & E failed to prove that it ever intended to permit the recreational use of its property. Therefore, it was error for the trial court to overturn the jury verdict.
A formal, recorded, written act of dedication of the property to recreational purposes is not required, but the landowner must demonstrate his intent to allow his property to be used for recreational purposes. There must be permission to use the property for recreational purposes. Lacombe v. Greathouse, 407 So.2d 1346, 1349 (La.App. 3 Cir.1981); Pratt v. State, 408 So.2d 336 (La.App. 3 Cir.), writ denied, 412 So.2d 1098 (La.1982). If there was recreational use of LL & E's property, it was not such use as LL & E ever intended to permit. The record does not support a finding that LL & E ever intended to permit the recreational use of the location where plaintiffs were injured, but it was LL & E's burden to do so.
Additionally, and of greatest significance, I find that the legislature did not intend to grant recreational use immunity in the case of trespassing and that this intention is effectively expressed in LSA-R.S. 9:2791 and 9:2795.
To the extent that the landowner would deny such use I can think of no public policy for affording such immunity to the landowner. When it is remembered that the recreational use immunity is in derogation of the injured party's normal right to recover, the argument in favor of limiting the immunity to those situations clearly related to the purpose of the recreational use immunity becomes even more compelling.
To restate this line of reasoning in the vernacular, the recreational immunity law should be read as saying:
"If you're nice enough to allow someone to enter your land for recreational use, you qualify for recreational use immunity. But if you are not that nice, then you can be sued like anybody else. Therefore, if you give Joe permission to make recreational use of your land, but refuse it to Sam and both are injured on your land, you are immune as to Joe. But you are not immune as to Sam, and why should you be? What have you done for Sam that he should be made to give up his right to recover? Sam may be a trespasser, but why should he be treated any worse by the law for trespassing on this property than on some other property? What public policy is advanced by doing so? The public policy of encouraging the opening of lands for recreational *176 use is advanced only by granting immunity as to Joe. It is defeated by granting immunity as to Sam because it deprives you, the landowner, of any incentive to broaden the group of people to whom you give permission to use the land because you gain no broader immunity by doing so, i.e., if you get immunity as to all comers simply by letting Joe use your land, why would you bother giving permission to anyone else to enter? Are we to believe that the legislature intended to confer such broad based immunity on the landowner so cheaply and allow its policy objective to be frustrated so easily?"
Moreover, the purpose of the law is clearly not to discourage trespassers, i.e., it was not designed to punish Sam for trespassing. If that had been the intent of the legislature, it would have instead enacted an "immunity for liability to trespassers law" which would apply to trespassers on any property.
Nor is the purpose of the statute to encourage recreational users. They are required to give up some of their tort remedies.
The only possible purpose for the recreational use immunity is to encourage landowners to open up their property to recreational use.
To suggest that this interpretation confers some benefit on trespassers is spurious reasoning. The right of the trespasser is not enhanced in any way. It merely remains unaltered by the recreational use immunity law. The only legal benefit conferred by the recreational use immunity is on the landowner who gets immunity as a quid pro quo for permitting recreational use. To argue that allowing the Verdins to retain their normal right to sue is somehow doing them a special favor is a smoke-screen for expanding LL & E's immunity without getting any quid pro quo for doing so.
That the legislature intended to limit the application of the recreational use immunity to those situations consistent with the objective of the immunity (increased access by the public to recreational use) can be seen by reading LSA-R.S. 9:2791 and LSA-R.S. 9:2795 together carefully.[1]
LSA-R.S. 9:2795 B(2) limits the immunity of owners of commercial recreational developments or facilities to "land which does not comprise the commercial recreational development or facility ..."
LSA-R.S. 9:2795 B(1)(b) uses the term "such person" which clarifies that permission given to enter the land to "any person" as used in LSA-R.S. 9:2795 B(1) confers immunity only vis a vis the permittee and not others. Likewise LSA-R.S. 9:2791 A refers to "the person to whom permission is granted", demonstrating the legislature's intention to limit immunity to those instances where the public policy objective of encouraging the landowner to grant permission to enter has been realized.
The Supreme Court In Monteville, supra, in explaining that the purpose of the law was to "encourage the owners of land to make land and water areas available to the public for recreational purposes" the Supreme Court stated:
If a suitable tract is properly dedicated to one or more of the specified recreational purposes, the landowner or occupier's exposure to liability to a person who enters or uses the premises for such a recreational purpose is drastically limited.
Id., 567 So.2d 1097, 1101.
By this the Supreme Court in Monteville is saying that the immunity extends only to those recreational uses for which the "tract is properly dedicated", because the public policy is not advanced by extending the immunity to other situations even where they may involve recreational use.
Therefore, as denying recreational use immunity in trespass situations is the only reading of the statutes that will advance the policy purpose behind the law; as this approach is consistent with the plain language of the statutes as discussed above and leads to no absurd consequences; and as the law *177 should be strictly construed as being in derogation of the common right of injured parties to be compensated for those injuries and as for the same reason all ambiguities in the statutes should be resolved favorably to the interests of the injured parties,[2] I find that on all scores the Verdins must prevail.
For the foregoing reasons I would grant rehearing, reverse the judgment of the trial court, and reinstate the jury verdict.
LOBRANO, Judge, denies rehearing.
I write separately to address the concerns of Judge Byrnes in his reasons to grant rehearing.[1] Those reasons lead to the conclusions that: (1) a landowner must either open his land to all for recreational purposes or he cannot obtain the benefits of the recreational immunity statute; (2) he cannot use his property for commercial purposes and still benefit from recreational immunity and (3) the user without permission is in a better position than those who obtain permission. Those are incorrect assessments of the legislative intent.
If the Verdins had sought the permission of the landowner to pursue the recreational activity of fishing, the immunity statute would protect the landowner. No less protection should be afforded if they didn't obtain permission. It should not matter whether the landowner allows everyone, indiscriminately, to use the land, or whether he allows its use by a few. Nor should it matter whether his land, at the same time, is also used for commercial activity. If that were the case, every farmer who allows timber activity on his property would be deprived of the immunity granted by the statute when he also allows the deer hunter the recreational use of the same property.
Simply put, the Verdins were using the landowner's property, without permission, for a recreational activity. The landowner should not be deprived of the immunity afforded by the statute simply because he also happens to allow commercial activity on the same land or because the Verdins did not have permission.
My colleague's contrary opinion, even though persuasively articulated, ignores the plain wording of La. R.S. 9:2791 wherein it is stated in the first sentence:
"A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes." (emphasis added)
The above does not restrict the "no duty of care" to only those who have permission. It says "no duty" is owed to those using the premises for recreational activity. The second sentence, then, provides for the additional immunity granted to those who give permission. It says that if permission is granted, the owner "does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted."
The reasoning of my colleague's "Sam and Joe" vernacular can be just as easily read as saying:
"Joe, why get permission from the landowner. Do as Sam does, go ahead and fish and hunt all you want, without the landowner's permission. If you get hurt, then you can sue him without worrying about recreational immunity."
Surely, the legislature did not intend that scenario. However, my colleague's position encourages it. My disagreement with his arguments is, in part, due to the difference between our understanding of the true particularities of rural land and its uses. For example, if a person is a true criminal trespasser, our discussion would probably be moot because La. R.S. 14:63(L) provides immunity *178 against suits by one convicted of criminal trespass. However, as a practical matter, most farmers and rural property owners are rarely able to prosecute a "trespasser" because of the law's stringent posting requirements. See, La. R.S. 14:63. Thus, the landowner is faced with the intruder on his property who doesn't have permission, but yet can't be convicted of criminal trespass. I believe the legislature also intended to afford recreational immunity to apply in that factual scenario. If not, then as Sam said to Joe, "Why ask for permission? If you do, then recreational immunity bars any claim you may want to make. If you don't ask permission, the worst that can happen is the landowner catches you and makes you leave. He can't prosecute for criminal trespass and you won't be faced with immunity if you get hurt." My colleague's position sanctions this scenario, while mine does not.
NOTES
[1] LL & E claims in brief that the Verdins should be precluded from raising many of these issues on appeal because they failed to raise them at the trial court level. However, because we find no merit in any of the Verdins' arguments, it is unnecessary for us to determine whether the Verdins should be precluded from raising the issues.
[2] This factor is contemplated by the Keelen case, although it has not previously been stated as a factor for consideration by the Louisiana Supreme Court. See 463 So.2d at 1290. See also Singletary v. Crown Zellerbach, 554 So.2d 846, 848-49 (La.App. 1st Cir. 1989).
[3] Citing the trial testimony of LL & E's employee, Gerald Voisin, that the property was subject to a commercial trapping lease, the Verdins claim in brief that LSA-R.S. 9:2791 does not apply because trapping is not listed as a recreational activity under LSA-R.S. 9:2791. The Verdins apparently ignore their own stipulation that the property is subject to "recreational waterfowl, hunting and trapping" leases. That stipulation relieved LL & E of any burden to prove that the property was subject to recreational leases. Moreover, Mr. Voisin testified specifically that LL & E granted some 6,000 leases on some 640,000 acres of undeveloped property it owns in southern Louisiana, including duck leases and campsite leases. Although Mr. Voisin did say that the exact location where the alleged accident occurred was subject only to a trapping lease in December 1991, that does not change the fact that LL & E had "dedicated" its property to recreational purposes, as that factor has been interpreted in the relevant caselaw.
[4] In brief, the Verdins also cite this court's decision in Smith v. Southern Pacific Transportation Co., 467 So.2d 70 (La.App. 4th Cir. 1985) in support of their argument that the recreational use immunity statutes should not apply under the facts of this case. In Smith, the plaintiff was injured on an open street running through the grounds of City Park in New Orleans. This court found that the recreational use immunity statutes did not apply to that particular factual situation because the injury occurred on a part of the property used for commercial, not recreational, purposes. However, the case does not stand for the proposition urged by the Verdins that the recreational use immunity statutes do not apply if any commercial use is made of the property. Moreover, the record in this case does not prove that the trapping lease on the area of the property where the alleged accident occurred was granted for commercial, as opposed to recreational, purposes. We decline to accept the Verdins' argument that all trapping is done for commercial purposes in the absence of any record evidence to that effect.
[5] We disagree with the Verdins' argument that strict construction of the statute requires that we consider the two sentences in LSA-R.S. 9:2791 A to refer to the same people, people with permission to enter the land for recreational purposes. The Verdins would ignore the fact that the first sentence of the provision expressly refers to "others" without qualification, logically meaning all others. We interpret the second sentence, not to limit the persons against whom the immunity applies, but to clarify the fact that the immunity applies even when the injured party had the landowner's permission to enter the property probably an allusion to the different levels of duty owed to invitees as opposed to trespassers under the old law. In our view, the only reason the legislature failed to specifically address a landowners duty to people without permission to enter the property is that the statute is obviously designed to apply in that case.
[6] Despite the language in Keelen, 463 So.2d 1287, and Monteville, 567 So.2d 1097, cited by the Verdins, that the recreational use immunity statutes are in derogation of a common right and therefore must be strictly construed, we agree with the Third Circuit Court of Appeal's statements in Holder, 552 So.2d 20, that the legislature intended the immunity statutes to have broad application. The Keelen case itself acknowledges the fact that the task of appellate courts applying the statutes "is to determine the intent of the legislature and the scope of immunity granted by the statutes." 463 So.2d at 1289. The best evidence of the legislature's intent that the immunity statutes be applied broadly is the language of the 1989 amendments, making the immunity applicable even when the land is subject to a lease or has been posted to restrict use of the land to less than the entire public. Even under the required strict construction, we find that the recreational use immunity statutes apply to LL & E under the facts of this case.
[1] In addition to the reasons expressed herein, I am in complete accord with Judge Lobrano's reasons for denying rehearing.
[1] As this Court noted at p. 165 of its original opinion:

Because the two statutes deal with the same subject matter, they must be read in para materia [citation omitted]. In fact, the jurisprudence generally does not distinguish between the two statutes.
[2] Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1100 (La.1990).
[1] In addition to the reasons expressed herein, I am in complete accord with Judge Plotkin's reasons for denying rehearing.